HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. RED CROSS STOCK FARM.

Decided November 29, 1899.

**1. Justice Court—Pleadings—Railway—Stock Killing.**

Though great accuracy in stating a cause of action is not necessary in justice court, where plaintiff undertakes to state the issues on which he relies, he is confined to those stated; thus, where a railway is sued for killing stock by negligence in maintaining defective fence and failing to discover and avoid striking them, negligence in omitting statutory crossing signals is not in issue.

**2. Railway Crossings—Signals—Killing Stock.**

The damages recoverable for omission of signals required for railway crossings are not limited to those incurred by the traveling public; injury of stock may be included, if caused by such omission.

**3. Damages—Value—Price Previously Paid—Harmless Error.**

The price formerly paid by the owner for an animal is not admissible evidence of its value; but the error was harmless where other and ample proof that it was of such value was uncontradicted.

**4. Railway—Cattle on Track—Stopping Train.**

It is error to direct a verdict for plaintiff for the value of cattle killed by a train if those operating it could, by ordinary care, after discovering them on the track, have stopped the train before striking them. Duty to stop was not absolute, but a question for the jury.

**5. Suit by Married Woman—Business Name.**

Where the proceeding sufficiently showed that plaintiff, a married woman, joined by her husband, sued for the value of an animal killed as for her separate property, her designation of the name "Red Cross Stock Farm," under which she was doing business, could be rejected as surplusage; but judgment should be rendered in favor of husband and wife.

**6. Community Property—Suit for.**

The husband must sue alone for injury to community property.

APPEAL from the County Court of Travis. Tried below before Hon. A. S. WALKER.

*W. T. Burns*, for appellant.

*John Dowell*, for appellee.

FISHER, CHIEF JUSTICE.—This action originated in the Justice Court, and from there was appealed to the County Court. Judgment

was rendered in favor of Mrs. Annie Mitchell, doing business under the name of the Red Cross Stock Farm, against the railroad company for the sum of $125, the value of a certain cow, alleged to have been killed by one of the locomotives of the railroad company.

The complaint filed in the Justice Court is in the name of the Red Cross Stock Farm, as plaintiff, against the railroad company, wherein it is charged that the cow in question was the individual property of Mrs. Annie B. Mitchell, doing business under the name of the Red Cross Stock Farm.

The grounds of negligence alleged are that the railway track was not properly fenced where the cow was killed, and that the cattle guard at that place was defective and insufficient, in that an animal could walk over the same and get onto the track, and that at the place where the cow was killed she could have been seen by those operating the train at the distance of half a mile, and inferentially it is alleged that by reason of that fact she was negligently killed.

The citation issued in the case substantially alleges the claim and the negligence as before stated, and that the plaintiff sued for the sum of $125, the market value of the cow, and that the husband of Mrs. Annie Mitchell joined her pro forma for the purposes of this suit.

The defendant in the court below, under what is termed a plea of misjoinder of plaintiffs, objected to the capacity in which the plaintiff sued as the Red Cross Stock Farm, because it does not appear that the same is a joint stock company or corporation, therefore it can not sue or be sued; and that it also appears that Mrs. Annie Mitchell was a married woman at the time of the accrual of the cause of action, and therefore she was an improper party. This plea was followed by a general denial.

There is a conflict in the evidence as to the locality of the cow upon the track at the time she was killed. Plaintiffs' witnesses testified that the fence and cattle guard were defective, and that the cow, at the time she was killed, was standing on the railway track at a place where it was fenced. And the effect of the evidence coming from the plaintiffs upon this subject is that, in order for the cow to have gotten on the track at that point, she must have necessarily gone onto the track through the defective fence or over and along the defective cattle guard. They also testified that the cow could have been seen from the direction from which the train was coming for over half a mile, and that the train was going at the rate of about twenty or twenty-five miles an hour, and that no effort was made to stop.

The evidence offered by the railway company is to the effect that the cow, when killed, was on the track where a public road crossed it, and that in attempting to cross in front of the engine she was struck and killed; that the engineer or the fireman saw the cow with other cattle crossing the track when about sixty yards from the public road; that the stock whistle was immediately blown; that the track was not straight, and the inference to be drawn from their testimony upon this

subject is that cattle crossing the track at the public road could not have been seen the distance testified to by the plaintiffs; that after the cow was discovered crossing the track it was impossible to stop the train in time to prevent striking her. There is also evidence offered by the railroad company to the effect that the fence on the right of way and the cattle guard complained of were in good condition.

The court instructed the jury that it was the duty of the railway company to cause the whistle of the engine to be blown and the bell rung at a distance of at least eighty rods from the place where the railroad crosses a public road, and that the bell should be kept ringing until the crossing was passed; and that if the servants of the railway company failed to comply with the statute in this respect, and by reason thereof the cow was killed, to return a verdict in favor of the plaintiff.

It was error to give this charge In stating the cause of action in the justice court, the same degree of accuracy is not required as would be the case if the suit was brought in the county or district court, but where the plaintiff undertakes to plead in the justice court, and states the issues upon which he relies in order to hold the defendant liable, he is confined to what is there stated. In the statement of the cause of action as filed in the Justice Court and as stated in the citation issuing out of that court, and upon which the case was tried in the County Court, it is nowhere alleged as a ground of negligence that the failure to blow the whistle or ring the bell was the negligence which caused the death of the cow. Therefore it was error for the court to submit that question to the jury, as it was not made an issue in the case.

Appellant further complains of this charge on the ground that the statute requiring the whistle to be blown and the bell rung in approaching a street or public crossing does not apply to cases of this character. We do not think the statute should be given this restricted construction. It in terms provides that where injury results from the failure to perform the duty enjoined by the statute, the railroad company shall be liable for all damages which shall be sustained by any person by reason of such neglect. "The damages sustained," as mentioned in the statute, for which any person injured is entitled to recover, are not limited solely to injuries sustained by the traveling public at the crossing. And if giving the signals required by the statute could serve any useful purpose in causing animals on the track at a public crossing to leave it, we see no reason why the statute would not apply. The statute requires the whistle to be blown and the bell rung, and it shall be kept ringing until the engine has passed over the crossing. If these things were done, it might serve a very useful purpose in frightening animals off the track.

The court should not have admitted the evidence of the witness J. B. Mitchell, as complained of in appellant's third assignment of error. But, however, we do not make it ground for reversal, because it is clear that it did not influence the jury; but in view of another trial the court should not admit it, as the value of the cow as there stated is too remote. The plaintiff's claim was only for $125, which is alleged to be the value

of the cow.   All of the witnesses testified that that was the value of the animal, and in this respect there is no dispute in the evidence.   The verdict of the jury and the judgment of the court was for this value, consequently it is clear that the evidence of Mitchell as to what he had paid for the animal some time ago did not influence the jury in reaching the amount of their verdict.

The court in its charge instructed the jury as follows: "The law requires that the fellow servants in charge of its train should operate such train with ordinary care, and if you find from the evidence that by the use of ordinary care the defendant's servants in charge of the locomotive could have discovered the cow on the track in time to have stopped the train and avoided striking the cow; or if you find from the evidence that after defendant's servants in charge of its locomotive discovered the cow on defendant's track, such servants could, by the use of ordinary care, have stopped the train before the cow was struck, then you will find a verdict for the plaintiff."

Error is assigned on this charge.   It is contended that all that is required in those operating the train is the exercise of ordinary care, in order to avoid striking an animal upon the track, and that it was erroneous for the court to instruct the jury that it was the absolute duty of the railway company to stop its train if they could have done so by the exercise of ordinary care before reaching the cow.

The court should have left it to the jury to determine whether the company rested under the duty, under all the circumstances, of stopping the train.   If the cow could have been discovered by the exercise of ordinary diligence, or was discovered, it was the duty of those operating the train to exercise ordinary care under the circumstances to avoid striking her; but this might have been done without the necessity of bringing the train to a stop.   If the speed had been reduced and the train approached slowly, the cow might have been given time to have left the track; and if such had been the case, there would have been no necessity of stopping the train.   The charge as given was erroneous.

We do not think there was any error in the instruction of the court, as complained of in appellant's eleventh assignment of error.

In view of another trial, we would suggest that if the issue is raised by the evidence of the same effect as that found in the record, the court should submit to the jury, if requested, the question whether the cow in controversy was the separate and individual property of Mrs. Mitchell, or the community property of her and her husband.   Although Mitchell directly testified that the cow was the separate property of his wife, still, in view of his other evidence, as to the source from which the money came that purchased the cow, it leaves it doubtful whether it was money belonging to Mrs. Mitchell in her separate right, or was from the community funds of himself and wife.   Of course, if the animal was purchased with community funds, Mitchell alone could sue to recover, and the cause of action, as brought by his wife, should be abated.

With respect to the question raised as to the right of Mrs. Mitchell

to sue under the name of the Red Cross Stock Farm, it sufficiently appears that she has sued in her individual right, and that her husband joined her pro forma in the action. Such being the case, her designation under the name of the Red Cross Stock Farm might be rejected as surplusage. The statute confers upon the husband the duty and the right to sue for damages sustained to the wife's separate property, and it is permissible to join her with him as a party plaintiff in the action, and if they are successful the judgment rendered in the case ought to be in their favor. The judgment in this case was in favor of Mrs. Annie Mitchell, doing business under the name of the Red Cross Stock Farm. It was irregular in this respect, as it should also have been in favor of the husband. What is here stated is to obviate possible error in another trial of the case. For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*