## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. G. P. MARCHAND.

Decided June 11, 1900.

**1. Railway Company—Negligence—Accident at Crossing—Fact Case.**

See the opinion for facts sufficiently showing negligence to sustain a verdict against a railway company for injury to plaintiff, hurt at and near a railway crossing by a fast through train striking a cow and hurling it against him while the train was passing rapidly through a small village.

**2. Same—Rate of Speed as Negligence.**

The fast rate of speed at which a through train passes a station where it is not scheduled to stop is not per se negligence, but may be so in connection with circumstances and conditions existing there at the time within the view and knowledge of the operatives of the train, or that should have been known to them.

**3. Same—Contributory Negligence.**

Where, by long use, a public crossing had been established over a railroad track immediately at the end of a depot building, plaintiff could not be charged with contributory negligence because he used such crossing contrary to posted notices forbidding the use of the depot and its approaches as a thoroughfare, nor because he stopped for a few moments, leaning against the depot building and talking with some one on private business, just before starting across the track.

**4. Charge of Court After Reversal—Sufficiency of Evidence—Issues of Law and Fact.**

On a former trial the court instructed verdict for defendant, and the judgment was reversed on appeal on the ground that the evidence sufficiently raised the issue of negligence to require the submission of the case to the jury. On the second trial the court, in refusing an instruction directing a verdict for defendant, indorsed thereon that he did so in deference to the former opinion on appeal, and was still of the opinion that the evidence did not present the issue of proximate result. Held no ground for reversal, as this indicated only that the trial court differed with the appellate court on the questions of law, and as the former opinion left him free to exercise his judgment on the facts, he is presumed to have done so.

**5. New Trial—Diligence.**

A new trial was properly refused where it was sought on the ground of newly discovered evidence as to statements by plaintiff at the time of the injury, and it appeared that if reasonable diligence had been used, the existence of the evidence would have been discovered in time to have procured the attendance of the witness, who lived where the injury occurred.

APPEAL from Harris. Tried below before Hon. WILLIAM H. WILSON.

*J. W. Terry,* for appellant.

*Wheeler & Rhodes, Lewis Fisher,* and *Fisher, Sears & Sherwood,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellee, G. P. Marchand, to recover damages for personal injuries alleged to have been caused by the negligence of appellant in the operation of one of its passenger trains. The accident which is the basis of the suit occurred on the line of appellant's railway at the little town of Hitchcock, the population of which is estimated at from 250 to 350, and including the adjacent residents, at from 400 to 500 inhabitants. There was a road crossing over the track of appellant immediately east of its depot, the western margin of the road touching the eastern end of the depot. This crossing had never been established by law as a public crossing, but the railway company had acquiesced in its use as such both by vehicles and pedestrians for so many years that the question of the right to its use as such is eliminated from the case.

The appellee was a carpenter, and had been engaged for about two months next preceding the accident in the construction of a hotel at the place above named. On the occasion in question he left the hotel, where

his bedroom was, and walked across the railroad to a store for the purpose of buying some tobacco. In going he used the crossing, and in returning the same way he met one Keever, a pumper, and engaged in conversation with him. This conversation was private and personal and did not relate to the company's affairs. In the beginning of the conversation appellee leaned against the east end of the depot, and Keever stood about five feet from him. Thus situated Keever could see westward up the track for a long distance, the track being level and straight and it being a bright moonlight night. Appellee could not see in that direction, his view being obstructed by the depot building. This was about 9 o'clock at night, and the conversation had continued about five minutes when Keever abruptly and hurriedly left, disappearing around the corner of the depot in the direction of the track. Appellee, not knowing his purpose, waited a few moments, and then started to his room. He stepped three steps parallel with the track, when the passing passenger train struck a cow, hurling it about sixty feet in the direction of and past the appellee, striking him and inflicting severe injuries.

Keever testified that the train was running about thirty-five miles an hour when it passed. That it was a fast through train and not scheduled to stop at that point. That when he saw it coming it was about 600 feet away, approaching from the west. That about forty-five or fifty cattle were lying or standing on and near the track near the west end of the depot, and he left appellee for the purpose of driving them off. That he considered this his duty in view of the danger to the train. That he ran as hard as he could, and continued his efforts to get them off until the train was so near he ran into the street to save himself. He did not see the appellee when struck, and does not know that he saw the cow that struck him, until afterwards. Appellee, when struck, was nineteen feet from the center of the track, and had just at that moment discovered the approach of the train. The testimony was conflicting as to whether the whistle was sounded for the station, and whether the bell was ringing on its approach, but is sufficient to support a finding that neither was done. That the stock signal was not sounded; that the speed of the train was not materially checked, either on account of the station or the presence of the stock, and that it ran through the town at a speed of between thirty-five and forty miles an hour, is undisputed.

A merry-go-round, or "flying jenny," was in operation about 300 feet west of the depot, and about 100 feet from the track. There were present the usual lights and hand-organ music, and a considerable crowd of men, women, and children were in attendance. Two witnesses testified that as the train passed that point both the engineer and fireman were looking at it through the cab window. This, though contradicted, taken in connection with other circumstances, is sufficient to support a finding that neither the engineer nor fireman exercised reasonable care in keeping a lookout on passing through the station. The road

was unfenced at that point, though fenced up to within a few hundred feet of it, and the evidence is indisputed that the cattle at that season of the year would congregate at and near the track at night to avoid the mosquitoes. In addition to the large number of cattle present on the night in question, it was shown that their habits in this respect were known to the railway employes and the public generally at that point, including appellee. It was also shown that usually a number of people congregated at the depot to see the passing trains, though on this occasion no one was there except appellee and Keever.

The cow which struck plaintiff was not standing on the track, but ran upon it about ten feet in front of the engine. Both the engineer and fireman testified that they did not see her until she got on the track and it was then impossible to avoid striking her. This is undisputed. Appellee did not see her or the other cattle, and did not see or hear the approaching train until about the instant he was struck. The cow weighed about 1000 pounds, and the blow knocked appellee a distance of twenty feet, the cow going much further. That his injuries were severe and permanent is not questioned.

The evidence showed that it was the custom of many of the leading railways of the United States to run their through trains at a high rate of speed through towns of much greater population than the one in question, and that this was done in response to the public demand for fast travel; that this was done by appellant as to several of its fast trains, and appellee admitted that he knew the day trains ran through at a high rate of speed without stopping, but denied that he knew of this custom as to the night trains. This statement of plaintiff was not overthrown. Appellee also admitted that, as he was not on the track, he apprehended no danger, and had never heard of a like accident before.

The first trial resulted in a judgment for the company, the trial court having directed a verdict to that effect. That judgment was reversed on the appeal of plaintiff on the ground that the evidence presented issues which should have been submitted to the jury. 20 Texas Civ. App., 1. At the last trial, on the state of facts as above set out in substance, a verdict and judgment were rendered in favor of plaintiff, from which appellant has appealed and here urges many assignments of error.

By the first assignment the judgment is assailed as unsupported by the evidence, because the evidence fails to show that it was negligence to run the train through a town of that size at a high rate of speed, and because it appears that the failure to ring the bell or blow the whistle, or to keep a lookout, did not contribute to the accident. Under the charge of the court the jury must have found that, under the circumstances, the running of the train at a high rate of speed was negligence, and that the injuries complained of by plaintiff were the proximate result thereof. In discussing the question of negligence vel non on the part of the company and whether its consequences complained of were proximate, or such as could have been reasonably fore-

seen, we will proceed upon the assumption that plaintiff was without fault, postponing for the present the assignments presenting the question of contributory negligence and assumed risk.

We are of opinion that, under the facts of this case, the appellant can not be justified on the ground that the cow came upon the track and was discovered by the train operatives too late to check the speed of the train and prevent the collision. The speed of the train, in the light of the circumstances, is the act complained of and upon which the recovery can alone be upheld. It is true, as contended by appellant, that the high rate of speed is not of itself negligence. This doctrine was announced on the former appeal, and has been settled by many well considered cases. But we have found no case, and have been cited to none, in which it has been declared that speed may not become negligence under certain circumstances. In determining whether the act of the train operatives in running a train at a high rate of speed amounts to negligence, it is proper to consider not only such attendant facts and circumstances as were known to them, but such as in the exercise of ordinary care they ought to have known. The following facts attendant upon or immediately preceding the accident in question were either known or should have been known to the train operatives: First, the existence of the station, and the fact that persons were likely to be present near the track at that point. This latter is emphasized by the known presence of a large number of people only a short distance from the station, and that the railway at that point divided the town into about two equal parts. Second, the existence of the crossing, with the attendant right of the public to use it and its approaches. In this connection it must have been known to them that at that time of night and under the facts then existing and patent to the most casual observer, it would most probably be in use by some portion of the public having a right to use it. Third, they must be held to have known of the large number of cattle on and near the track at that point, and the probability of striking some of them. To hold otherwise upon this point would be to assume that the engineer and fireman were so deficient in vision as to unfit them for the service in which they were engaged. Keever, a witness for the company, estimates the number of cattle at forty-five or fifty. They were on and near the track, and in the light of past experience their presence must have been expected and foreseen. Fourth, in view of their knowledge as to the existence of the station and crossing; of the probable presence of a portion of the public at that point; of the presence of the large number of cattle, and the extreme probability of striking some of them; of their knowledge that the pilot or cow-catcher on the engine was constructed so as to throw an obstruction to one side or the other, and the fact that the greater the speed of the train the greater the probability of striking some of the cattle; of the fact that the greater the force with which they were struck, the further they would be thrown,—they must be held to have known that the probable consequences of the ex-

cessive speed would be an injury to some bystander having the right to be present at that point. This last question will be discussed more fully under the assignment presenting the question of proximate cause, and their ability to reasonably foresee the consequences complained of.

The above enumerated facts, which the train operatives must be held to have known, amply support the finding of the jury that the running of the train at the high rate of speed shown was negligence from which the injury resulted. Absolutely nothing was done on the part of the train operatives to avoid striking the cattle. But it is contended by appellant that the effort of Keever to drive the cattle from the track was a discharge of the duty of the company in this regard. We do not think this contention sound. While it is true Keever testified that he considered it his duty to drive the cattle from the track, he seems to have considered it so only in view of the danger to the train, and it does not affirmatively appear that he was chargeable with it as one of the duties incident to his employment, or that the train operatives had the right to rely on him to clear the track of cattle. But, conceding that it was his duty, the fact remains that he did not undertake it until the train was within five or six hundred feet of them, a distance which must have been covered in about fifteen seconds or less. From Keever's testimony we may infer that he made strenuous efforts to clear the track, and that the near approach of the train compelled him to desist for his own safety, and this before the track had been cleared. The efforts of Keever must have been seen by the engineer in the exercise of slight care, and his attention must have been at the same time attracted to the cattle and the difficulty of driving them away. It will not do to say that because when the train was approaching or passing, no cattle were actually on the track, those operating the engine might assume that none would go thereon. They might with equal reason have assumed that cattle on the track would get off. The very nature of the duties of an engineer familiarize him with the habits of cattle on the approach of a train, and he must know he can not expect of them the exercise of either judgment or discretion. On the contrary, the noise and appearance of the train is calculated to excite them and cause them to rush hither and thither, especially when they are near the track in considerable numbers. Even if this were not a matter of common knowledge, it is a fact which an engineer of all men would be the most likely to know. The train operatives are then placed in this position. They propelled the train at a speed of between thirty and forty miles an hour, through a station where forty or fifty head of cattle were congregated on and near the track. The speed of the train was not checked, and no other precaution, as far as they were concerned, was substituted therefor. We think the speed of the train may fairly be held to have been negligence, notwithstanding the efforts of Keever to clear the track of cattle. This being true, it certainly would not be seriously contended that the company would not be liable to the owner for the cow that was killed.

The case of Railway v. Wink, 31 Southwestern Reporter, 326, cited by appellant, is easily distinguished from the case at bar. In that decision the facts are not fully stated, but it is declared that the speed of the train was not the proximate cause of the accident. It was a heavy freight train, and the horse could not have been seen in time to stop the train and avoid the injury. It also appeared in that case that the stock were apparently in charge of two men, and that the loose horses rushed past them and went upon the track at a time which rendered it impossible for the train operatives to prevent the accident by any effort on their part. In that case it was declared, as was said on the former appeal in this case, that speed alone is insufficient to establish negligence. We apprehend, however, that had there been a drove of loose horses on and near the track which could have been seen in time to have checked the speed and prevented the injury, the result of that appeal would have been different. Denty's Case, 37 Southwestern Reporter, 719, holds that a high rate of speed alone does not constitute negligence, and that no other facts were shown to fix the responsibility on the company. Sistrunk's Case, 5 Southern Reporter, 79, goes no further, but does declare that it was error to give a charge to the effect that there was imposed on the engineer no precautionary duty with reference to live stock until he discovered them actually on the track or approaching it; citing Railway v. Jones, 56 Alabama, 507. In Railway v. Ritchie, 102 Pennsylvania, 425, it is held that a high rate of speed over a crossing is not negligence in the absence of statutory inhibition, but it is conceded that the force of special circumstances may require a less rate. The other cases cited upon this point have no more bearing upon this case than those noticed, and announce no principles inconsistent with those upon which this opinion is based.

On the question whether the operatives of a train may wait until the stock is actually upon the track before exercising care, we may cite with effect the recent case of Railway v. Letsch, 55 Southwestern Reporter, 584, in which it was held to be gross negligence for train operatives to make a running switch at a high rate of speed over a crossing near which a number of small children were playing. It was held that they must have foreseen the probability of some of the children undertaking to cross between the engine and the following car. For a much stronger reason the engineer should have foreseen the probability of such an act on the part of live stock near the track of a railway.

We can not assent to the proposition urged in the second assignment of error to the effect that the plaintiff is not shown to have been in the lawful use of the crossing. There is no rule of law requiring of plaintiff more than the exercise of ordinary care in the use of a crossing. That the right of way is crossed leisurely, or not at exact right angles and in haste, does not compel a contrary conclusion. The question is, did he act as a person of ordinary prudence? If the evidence authorizes the conclusion that he did, and we think it does, we need inquire no further. The notice of the company forbidding the use of

its depot and approaches has no bearing upon the question. It had no right to forbid the use of the public crossing, or its approaches, in a manner consistent with ordinary care. The plaintiff did not overstep the limits of the highway. He was not on the track, and was in no danger from the approaching train, considered alone. As to danger from that source alone, he was chargeable with the duty to exercise his senses. The danger which caused the injury was the high rate of speed, combined with the presence of the cattle. The company actually knew of their presence. The plaintiff did not, and had he known, he might have assumed, in the absence of notice to the contrary, that the company would exercise the care which the situation required. In Railway v. Hare, 4 Texas Civil Appeals, 18, the court, under the peculiar facts of that case, expressed a doubt as to whether the injured party was using the crossing as such, but did not decide the question, and made no declaration inconsistent with what is here held.

By the third assignment of error the judgment is assailed as unsupported by the evidence upon three grounds, viz: (1) The evidence shows that the company could not foresee that appellee would be at that point at the instant of time that the body of the cow was hurled past it. (2) That the sudden appearance of the cow on the track could not have been foreseen in time to have prevented the collision with her. (3) Because such an accident had never happened before in the history of the company's road, or in the history of the world except on one occasion, and under the law defendant could not be charged with the duty to foresee and avoid it.

The second ground has been disposed of in a former part of this opinion, and we have proceeded upon the theory that the judgment can in no event be upheld under the facts of this case unless the company is guilty of such negligence as would render it liable for the injury to the animal. The first and third grounds embodied in this assignment present, in effect, the question whether the injury to appellee was such a result of the appellant's negligence as might reasonably have been foreseen by the company. It seems to us the question is not whether an accident of the exact character ever happened before, but rather, whether, under the known circumstances of the case, the striking and hurling of a cow on and over a point where persons had the right to be, and might reasonably be expected to be, would likely result in injury to some person present. That the cow was an animate object is immaterial. Suppose the cow, instead of striking the man, had struck and injured one of the many cattle obviously present with her. If the company should be held liable for the animal first struck, its responsibility for the second animal injured could not be successfully questioned. . That the secondary though proximate result of the company's negligent act was an injury to a man instead of another animal ought not to vary the result. To establish the rule that a person should not be held responsible for his negligent act unless a like consequence had happened before would often result in injustice and wrong. Sup-

pose the engine had exploded in passing, and the explosion was due to the actionable negligence of the company. Suppose the force of the explosion shattered the depot building, and fragments of the building had injured a bystander, would the liability of the company be a serious question? The question presented is not free from difficulty, but we forbear to discuss it further or to review the authorities cited in support of appellant's contention, in view of the fact that the question was decided on the former appeal. Some of them were noticed in the opinion on the former appeal, and it was held that the issue should be submitted to the jury. This has been clearly and properly done, and we do not feel authorized to review their verdict. We think it finds sufficient support in the evidence.

Appellant further contends that the cause should be reversed because the trial judge, in refusing an instruction directing a verdict for defendant, indorsed thereon that it was refused in deference to the former opinion of this court, and he was still of opinion that the evidence did not present the issue of proximate result. We construe this to mean that the trial court still differed with the appellate court on the questions of law decided on the former appeal in so far as proximate result was concerned. Nothing in that opinion should have controlled him on any issue of fact. As to that, he was left free to exercise his judgment, and he is presumed to have done his duty in that respect.

It is insisted that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence. This consisted of the statement of one W. P. Roohm to the effect that on the night of the accident plaintiff stated to him that "It served him (plaintiff) right; that he had no business driving cattle off the track." The affidavit of the proposed witness shows that the alleged conversation occurred about an hour after the accident, and before the injured man was carried into the depot. There was evidence on the trial showing that plaintiff was knocked insensible and remained so until after being removed into the depot. One Henke testified to a statement similar to the one proposed to be proved, and his testimony was evidently disregarded by the jury. The proposed witness remained silent through two trials and an appeal. Appellant's witness Keever does not claim that plaintiff was assisting him in driving the cattle off, and the evidence seems undisputed that when struck appellee was only nine feet from the point where the conversation occurred. The trial court may properly have concluded that the proposed evidence was not probably true and would not have influenced the result. But we think he was amply justified in refusing the motion on the ground that no sufficient diligence was shown.

It appears that the accident attracted attention in the little town. It is not claimed that the presence of Roohm at the side of the injured man could not have been ascertained. When they learned from Henke that plaintiff had made the statement testified to by him, the names

of those in attendance on the injured man should have been procured, and they should have been interviewed to ascertain what statements were heard. Roohm was running a livery stable at the time within a few hundred feet of the accident, and if the witness was worthy of credence a direct inquiry would have elicited the proof desired. It is not pretended that this was done. Nor is it pretended that Roohm refused to talk, or denied knowledge of any useful fact. He simply remained silent. No sufficient diligence was shown in procuring the information. If the course proposed were permitted, there would be no end to litigation. The court did not err in the respect complained of.

We do not deem it necessary to notice the other assignments of error at length. We are of opinion they are without merit. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.