HOUSTON & T. C. R. CO. v. GARRETT.

(Court of Civil Appeals of Texas. Austin. Oct. 15, 1913.)

1. RAILROADS (§ 406*)—KILLING ANIMALS—RIGHT TO RUN AT LARGE—TRESPASS.

Where no stock law was in force in a district including that where plaintiff's horse was killed by one of defendant's trains, it was lawful for animals to run at large there, and the horse was therefore not a trespasser on defendant's right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1400, 1401; Dec. Dig. § 406.*]

2. RAILROADS (§ 446*)—KILLING ANIMALS—NEGLIGENCE—QUESTION FOR JURY.

Where plaintiff's horse was killed by defendant's train within the limits of a small town where no stock law was in force, but where the train operatives knew that stock were accustomed to graze along the tracks at will, evidence that the train was operated through the town at a high rate of speed, that neither the engineer nor fireman were keeping a lookout, and that they failed to blow the whistle or ring the bell, was sufficient to carry the question of the railroad company's negligence to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1627–1641; Dec. Dig. § 446.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from Waller County Court; J. D. Harvey, Judge.

Action by James Garrett against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and W. B. Garrett, of Austin, for appellant. J. V. Meek, of Houston, and Hannay & Hannay and R. E. Hannay, Jr., all of Hempstead, for appellee.

KEY, C. J. In this case the plaintiff sued for and recovered the value of a horse alleged to have been negligently killed by the defendant. The plaintiff charged in his petition that his horse was killed by one of the defendant's trains, which was running at the high rate of speed of 45 miles an hour; that the defendant negligently failed to ring the bell or blow the whistle as a warning to the horse, which was seen by the engineer, who could have stopped the speed of the train and prevented injuring the horse. He also charged that, by the use of ordinary care, the engineer, or those in charge of the train, could have prevented the injury by ringing the bell, blowing the whistle, and stopping the speed of the train, and that they negligently failed so to do.

The defendant filed a general demurrer and one special exception to the petition; but they appear to have been abandoned, probably because the plaintiff filed a trial amendment, curing the supposed defect pointed out in the special exception. At any rate, it does not appear that the trial court was requested to rule upon the exceptions. Hence we hold that, as the matter stood at the time of the trial, the plaintiff had the right to prove that at the time in question, and prior thereto, live stock were in the habit of grazing upon appellant's right of way, and that the engineer who was operating the train was aware of that fact. And, for the same reason, we hold that it was proper for the court to submit that phase of the case to the jury, leaving it to that body, as the court's charge did, to determine whether or not, under the circumstances referred to, the defendant was guilty of negligence. Railway Co. v. Red Cross Stock Farm, 22 Tex. Civ. App. 114, 53 S. W. 834; Railway Co. v. Marchand, 24 Tex. Civ. App. 47, 57 S. W. 860.

[1] Appellant assigns error upon the action of the court in refusing to instruct a verdict for it, and also in refusing to set aside the verdict, upon the theory that it was not supported by testimony. The proof shows that the accident occurred at night, while one of appellant's passenger trains was passing through the town of Waller, where appellant was not required to fence its track. Waller is a small town, containing only a few hundred people. A dirt road crosses the railroad track near the station. The train in question was not scheduled to, and did not, stop at that station. There is some conflict in the testimony as to the rate of the train's speed; but the testimony justified the finding that it was as much as 45 miles an hour. The horse was not killed at the crossing, and there is some conflict in the testimony as to how far it was from the crossing and from the station to the point where the horse was found dead. We do not regard that fact as material. There was also conflict in the testimony as to whether the whistle was blown; but the evidence of the plaintiff would support a finding that such signal was not given as the train approached or passed the station. The engineer and the fireman in charge of the train both testified that, in so far as they knew, the train neither struck nor killed any horse at the time and place referred to. There was no proof that either of them was keeping any lookout in front of the engine. No stock law was in force, and therefore it was lawful for animals to run at large, and the horse was not a trespasser.

[2] The strongest cases cited in behalf of appellant are Railway Co. v. Anson, 101 Tex. 198, 105 S. W. 989, decided by the Supreme Court, and Railway Co. v. Matthews, 158 S. W. 1048, decided by this court. Following the Anson Case, this court held in the Matthews Case that, where a horse was killed by a passing train within the switch limits of a town, evidence that the train was running very fast, without blowing the whistle or sounding the bell, was not of itself sufficient to establish the railroad company's negligence. Those cases, and others in which it has been said that the mere running a train at a high rate of speed or the mere failure to blow the whistle and ring the bell do not constitute negligence, cannot properly be construed as announcing the doctrine that, under no circumstances, would a jury be authorized to find that such facts constitute negligence. Such facts do not constitute negligence per se, or as a matter of law; but whether or not, in a particular case, they constitute negligence is to be determined by the surrounding circumstances. In the cases referred to circumstances were not shown that would justify a finding that the high rate of speed and the failure to give signals constituted negligence. On the other hand, in the Marchand Case, supra, and others to the same effect, proof was submitted which justified findings that it was the duty of those operating the trains to slacken speed or take other precautions to prevent injury to persons or live stock upon or near the track. Whether or not, in the absence of a statute so requiring, it is the duty of those in charge of a railroad train traveling at a rapid rate of speed to reduce the speed or give the customary warning of the approach of the train is dependent upon whether or not the railroad company, or such employés, have reason to suppose that the lives of persons or animals may be endangered unless such precautions are taken, and that is the important

distinction between this case and the cases relied on by appellant.

The plaintiff testified: "Why, all kinds of stock were in the habit of grazing along there on those tracks—grazed there all the time. Yes, sir; they were there very frequently, grazing on that Bermuda grass." The engineer who was operating the train in question said: "Yes; I have seen both horses and cattle along the track there at Waller at different times. Yes; they graze along there on the tracks sometimes." The fireman on the train testified: "Yes; I think when we went through Waller that morning we slowed down and rolled through there—as a general rule we do—I have no particular recollection about this particular morning; but, as a rule, we do." He also said: "We had electric headlights on that train; you can see an object on the track for almost a mile with those headlights. Yes; our lights were burning bright that morning—in good shape. Those headlights light the track up ahead of the engine for a distance of about 100 feet. I couldn't state how far they light the right of way on each side of the track—pretty good ways."

The testimony above set out, together with the undisputed facts, raised the issue as to whether or not the employés operating the train were guilty of negligence in not checking its speed and blowing the whistle, in order to prevent injury to live stock which might be upon the track at the place where the horse was struck and killed. That question was one for the jury to decide, and, having decided it against appellant, we do not feel authorized to set aside that decision.

No reversible error has been pointed out, and the judgment is affirmed.

Affirmed.