**LANCASTER et al. v. SALE.   (No. 1261.)**

(Court of Civil Appeals of Texas.   El Paso.
Nov. 23, 1921.   Rehearing Denied
Dec. 15, 1921.)

1. **Railroads ☞411(5)—Negligence essential to recovery for killing animal at crossing.**

To render a railroad company liable for killing an animal at a public crossing, the evidence must show negligence on the part of the railroad proximately causing the injury.

2. **Railroads ☞415(2)—Failure to use ordinary care to discover animal on track negligence.**

If an animal going on the railroad track at a crossing could have been discovered by the exercise of ordinary diligence on the part of trainmen, or was discovered in time to have avoided injury, it was the trainmen's duty to

have used ordinary care to have done so, and a failure so to do would justify a finding of negligence.

3. **Railroads ☞443(7)—Trial court may consider evidence most favorable to owner of animal killed in determining question of negligence.**

In an action for killing a cow at a public crossing, the trial court had a right to consider the evidence most favorable for the plaintiff in determining whether the cow could have been seen by the engineer at such a distance as to enable him to avoid injury, and in determining whether the train was slowed down, and it was also within the province of the court to determine from the evidence the facts of negligence and proximate cause.

Appeal from County Court, Martin County ; A. G. Odom, Judge.

Suit by J. R. Sale against J. L. Lancaster and another, as receivers of the Texas & Pacific Railway Company. Judgment for plaintiff, and defendants appeal. Affirmed.

Jno. B. Howard, of Pecos, for appellants. Morrison & Morrison, of Big Spring, for appellee.

WALTHALL, J.  This suit was brought by appellee against appellants as receivers of the Texas & Pacific Railway, to recover the value of a cow alleged to be of the value of $150, killed by a railroad freight train of the receivers, at a public road crossing near Stanton.

[1] The case was originally filed and tried in the justice of the peace court, a judgment there rendered in favor of appellee in the sum of $150, notice of appeal was given by appellants, and the appeal duly perfected to the county court. The case was tried de novo in the county court without a jury, resulting in a judgment in favor of appellee in the same amount as in the lower court. Appellants gave notice, and have perfected an appeal to this court. No finding of facts by the trial court is found in the record. Only one proposition is presented, namely : Where an animal is killed at a point not required to be fenced, negligence on the part of the railroad proximately causing the injury must be shown to justify recovery. The proposition is not controverted by appellee, but he insists that the evidence of negligence is sufficient to support the judgment.

The evidence shows without controversy that the animal was killed by one of appellants' freight trains at a public road crossing; that the train that struck the cow was going east; that there was nothing to obstruct the view of the cow at the crossing in coming from the west for at least 500 yards.

---

The witness Dickinson testified:

"I was in my jitney (automobile) coming to town, and I heard a train blow for the station, and I speeded my car, as the railroad ran parallel along there for quite a distance; I had my old jitney up to all she would stand, and was trying to run a race with the train, and it beat me. After the train blew for the station 10 or 12 telegraph poles from the crossing, and just before it got to the crossing, I heard it give the stock alarm signal. I could not tell how far the engine was from the crossing when the engine sounded the stock alarm whistle. He was running pretty fast, could not say how fast, but he was running faster than I was, and I believe I was going 20 miles an hour. I had my old jitney up as fast as she would go, and he was outrunning me. I came on down to the crossing and the train had passed, and I found where the cow had been struck on the crossing. I saw her heart laying beside the rail between where the vehicles cross and the cattle guards, and half of her body inside the right of way, where it had been dragged across the cattle guard and was laying on the outside of the track near the cattle guard inside of the fence. The train stopped. The train stopped a little below the water tank—that is, the engine stopped a little below the water tank—and it was an ordinary freight train, with a good many freight cars attached to it."

The statement of John B. Robinson was introduced by agreement. It was as follows:

"I was near the crossing westward from the water tank, and saw a train strike cow. I later learned the cow belonged to plaintiff. The ground was a little down grade, the country open, so that cattle could be seen for several hundred yards westward whence the train was coming. I heard the whistle just before the train reached the crossing, hundred yards or so when first sounded. The train was moving rapidly, and did not slow down. The cow was cut in twain, one part being dragged about 100 yards eastward from the crossing, the other carried to the tank 250 or 300 yards away. I saw the cow on the track when the whistle was first blown. Engine seemed to catch her by the hind foot, dragging her back on track."

The engineer of the train testified:

That he was running between 18 and 20 miles per hour, had shut off and was rolling downgrade. "When approaching the crossing I noticed a cow on the south side of the track near the crossing, her head turned toward the track facing north, the track at this place running east and west. When I first saw her she was standing still, and stood still until I was within about 200 feet of the crossing, at which time she began to move in the direction of the track as if to cross in front of the train, and I immediately applied the air to the train in order to slacken its speed to give the cow time to cross the track. I was watching her closely. She came on the track and kinder stopped, at which time I applied my air in emergency and began to sound the stock alarm whistle, and the cow, instead of going across the track as she could have done, and had plenty of time to have done, turned and started down the track towards the cattle guard and stepped into the cattle guard, and about which time my engine struck her."

The engineer testified that he did everything in his power or that could be done to avoid striking the cow; that the train was running about 8 miles an hour when the collision occurred; that there was nothing to obstruct his view of the cow but the cattle guard, but that he saw the cow as above stated.

There are some material differences in the evidence between the witnesses of appellee and appellants. The witness Robinson, it will be noted, says the cow was on the track when the whistle was first blown, and the train was running rapidly and did not slow down. The train seemed to catch the cow by the hind foot, dragging her back on the track. The engineer's statement is that when he saw the cow she was standing still until he was in about 200 feet of the crossing, when she began to move in the direction of the track as if to cross; that she came on the track and stopped, and then turned and started down the track towards the cattle guard, and then stepped into the cattle guard, where she was struck. He further said that he slowed the train down to about 8 miles an hour. If a part of the animal was beside the rail between where the vehicles cross the track and the cattle guard, and the animal's body was dragged across the cattle guard, as stated by Dickinson, the cow must not have been on, but west, of the cattle guard when struck.

The evidence of Dickinson and Robinson negatives the statement of the engineer that the train slowed down, and that the cow was not on the track at the time the whistle first sounded. The place where the cow was killed being at a public road crossing, to render appellants liable, the evidence must show negligence on the part of appellants.

[2] If the cow could have been discovered on the track by the exercise of ordinary diligence, or was discovered, in time to have slowed the train down and avoid striking her, it was the duty of those operating the train to have used ordinary care to have done so. A failure on the part of those operating the train to use such diligence would be sufficient to justify the finding of negligence, and that such negligence proximately caused the death of the cow. Houston & T. C. R. Co. v. Red Cross Stock Farm, 22 Tex. Civ. App. 114, 53 S. W. 834; Texas Cent. R. Co. v. Estes, 113 S. W. 547; International & G. N. Ry. Co. v. Diaz, 156 S. W. 907.

[3] The trial court had the right to consider the evidence most favorable for the appellee in determining whether the cow was

on the railroad track and could have been seen by the engineer at such distance from the crossing as to enable the engineer to slow down the train and avoid striking her, and in determining whether the train was slowed down, rejecting the evidence of the engineer that the cow was not on the track when he first saw her, but moved on the track when too near to stop the train, and that he did slow the train, and did what he could to avoid striking the cow. It was the province also of the trial court to determine from the evidence the fact of negligence and proximate cause. Kirksey v. So. Trac. Co., 110 Tex. 190, 217 S. W. 139; M. K. & T. Ry. Co. of Texas v. Merchant et al. (Com. App.) 231 S. W. 327.

Finding no reversible error, the case is affirmed.