## BRITTAIN v. FORT WORTH & D. C. RY. CO.

No. 13905.

Court of Civil Appeals of Texas. Fort Worth.

May 5, 1939.

Rehearing Denied May 26, 1939.

C. M. McFarland and W. B. Chauncey, both of Wichita Falls, for plaintiff in error.

Carrigan, Hoffman & Carrigan, of Wichita Falls, and Thompson & Barwise and Luther Hudson, all of Fort Worth, for defendant in error.

BROWN, Justice.

The appealing party was plaintiff in the trial court, and for convenience we will designate the parties as plaintiff and defendant here.

This is a most unusual case, and, to us, is one of first impression.

The plaintiff, a P. W. A. employee, was acting as flagman where a public highway crosses the defendant's tracks, several hundred feet from defendant's depot, in the town of Iowa Park.

Truck drivers employed on the P. W. A. project were hauling gravel and were crossing the defendant's tracks with empty and loaded trucks, while they performed the labor for which they were employed.

It was plaintiff's business to act as flagman for such truck drivers and to warn them when one of defendant's trains was approaching the crossing that the truck drivers were using.

On the occasion in question a truck driver, by the name of Hall, was approaching the crossing, with his truck, where the plaintiff was acting as a flagman, in the afternoon, and plaintiff, observing one of defendant's trains approaching the crossing, several hundred feet away, attempted to flag the truck driver down, by using a red flag furnished to him for that purpose.

The plaintiff had testified that he had yelled at another flagman, who was acting as flagman at the highway, to stop the driver of the truck, but such flagman would not do so but told plaintiff "he could stop him on the other side", and that the truck driver came on; then this question was asked plaintiff: "What were you doing?" To which he answered: "Flagging to stop him; I had a red flag and was going up and down to see if I could not get him to stop and he never stopped until he got to the track."

When the truck driver was placed on the witness stand, he sought to excuse his conduct by saying that he did not understand the signal "to stop", but thought he was being flagged to come across the track, and that he "did not know much about signals", but he admitted that he saw the approaching train and that he continued to drive the truck some 40, 50 or 60 feet after he observed the actions of the flagman, and that he tried to stop the truck before it reached the track, but was unable to do so, before the front portion of the truck was on the railroad track; that he jumped and saved himself from injury.

The plaintiff testified that, when he saw the truck driver was not going to stop, he retreated to a place of safety and the train struck the truck, and portions of the truck and train were broken and hurled through the air, and some broken part struck him and inflicted serious injuries upon him.

The case being tried to a jury, at the close of taking evidence, the trial court instructed the jury to find for the defendant, and judgment was rendered that plaintiff take nothing. Plaintiff has appealed.

The several assignments of error presented are, in substance: (1) Operating the train at a dangerous and reckless rate of speed, under the circumstances; (2) failure to slow down the train for the crossing; (3) failing to ring the bell, as required by the statute; (4) failure to slow down the train and to obey the signal giv-

en by the plaintiff, which was seen by the employees of defendant in sufficient time for them to have stopped the train; (5) discovered peril; (6) and that plaintiff having been struck by an object set in motion by defendant, the evidence was sufficient to raise an issue of negligence upon the part of the defendant's employees who were operating the train.

Appellant lays much stress upon Gulf, C. & S. F. Ry. Co. v. Marchand, 24 Tex.Civ. App. 47, 57 S.W. 860, by the Court of Civil Appeals for the Galveston District, in which a writ of error was refused.

In such case it appears that Marchand, on a bright, moonlit night, went to the Railway Company's depot and was just leaving, using a crossing that was customarily used by the public, with the acquiescence of the Railway Company, when one of the Company's fast freight trains, traveling rapidly through the town, struck a cow and knocked it into Marchand, severely injuring him.

In the opinion we find the facts established to be that cattle customarily ran at large on the tracks and around the depot; that the depot agent frequently drove them from the tracks; that the employees in charge of the train could see the cattle near the track, for some distance, but, instead of being on the "lookout", these operatives were looking off and were interested in a "merry-go-round" located nearby.

Recovery by Marchand was affirmed by the Court of Civil Appeals.

We think that decision goes a long way. It has never been cited, so far as we can discover.

But we do not believe that case is decisive of the case at bar.

Here we have a case where the plaintiff has been injured because of the negligence of the truck driver, who did not heed the warning given him by the flagman, either because he did not understand the signal, or because he thought he could "beat" the train, long after he saw the train approaching and must have known of the danger to which he was subjecting himself. According to his own testimony, he did not need the flagman's signal of danger, neither did he need to hear the engine's whistle or the ringing of the bell, in order to warn him of the approach of the train. He saw it coming when he says he was 60 feet from its track, and yet he came on—headed straight into danger!

We do not see where it was the duty of the operatives of the train to heed the danger signal that was being given by the flagman. It was not intended for the operatives of the train; it was clearly intended for the truck driver.

The plaintiff not only was not in danger when he was doing his best to flag down the truck driver, he was never in danger from the train.

The operatives of the train, who saw the flagman trying to flag down the approaching truck, had every reason to believe that an ordinarily prudent truck driver would obey the danger signal.

Instead of the truck driver believing that the signal was given for him to come on, the only persons who figured in the accident, who had the right to believe that the flagman's signal meant for them to come on, were those in charge of the train.

We are unable to find from this record where the defendant has breached any duty that it owed to the plaintiff.

We do not believe that the issue of discovered peril enters into this case.

Even if the railroad operatives owed a duty to the truck driver to do all within their power, with the use of the means at hand, to prevent striking the truck, the failure to exercise such duty would not, under the facts disclosed here, render the railroad company liable to the flagman because of a failure to discharge such duty that it owed to a third party.

But we are convinced that the evidence does not raise the issue of discovered peril insofar as the truck driver is concerned, and it is clearly shown that the plaintiff was never in a position of peril.

In Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, 535, the Supreme Court said: "Certainly it is at least equally true that trainmen are not bound to assume that a person not on the track will get on it, where it would be negligent and dangerous for him to do so; and, as they would not be bound to assume it, a jury could not properly find that they knew it would be done, in the absence of proof of knowledge."

The only operative of the train who could see the truck was the fireman and his testimony is plain and uncontradicted. In fact, it is largely corroborated by the truck driver. The fireman saw the truck and its driver and saw the plaintiff trying to flag the truck driver down, and, as was

said in the Shetter case, from which we quoted, the fireman had the right, under those circumstances, to assume that the truck driver would not run the truck upon the railroad track. When the fireman saw that the truck driver was not going to stop, he immediately applied the emergency brakes, but the train was so near the truck that it could not be stopped before the collision occurred. City of Wichita Falls v. Swartz, Tex.Civ.App., 57 S.W.2d 236.

The following cases sustain our views: Karr v. Chicago, R. I. & P. Ry. Co, 341 Mo. 536, 108 S.W.2d 44; Dretzka v. Chicago & N. W. Ry. Co., 216 Wis. 111, 256 N.W. 703.

We find no error and the judgment is affirmed.