THAD. S. HARRISON v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

Decided March 7, 1908.

**Railroads—Obstruction of Station Platforms—Negligence.**

Plaintiff was injured in an attempt to rescue a female passenger who, in walking around some trucks and a pool of water standing on the platform of defendant's passenger station, approached too near an incoming engine and was struck and injured by the same. Evidence considered, and held to raise the issue of negligence on the part of the railroad company in failing to provide its passengers a reasonably safe approach to its trains at the station, and hence a peremptory instruction for the defendant was error.

Appeal from the District Court of Cooke County. Tried below before Hon. Clem B. Potter.

*Stuart & Bell,* for appellant.—The court erred in peremptorily instructing the jury to find for the defendant in this cause because there was evidence showing and tending to show that Mrs. Parker was injured on account of the failure of defendant to provide for passengers a reasonably safe approach to its passenger coach at Myra. Missouri, K. & T. Ry. Co. of Texas v. Harrison, 99 S. W. Rep., 124; Texas & P. Ry. Co. v. Moseley, 58 S. W. Rep., 48; Texas & P. Ry. Co. v. Russell, 74 S. W. Rep., 569; Johnson v. Texas Cent. Ry. Co., 93 S. W. Rep., 433; Missouri, K. & T. Ry. Co. v. Byrd, 89 S. W. Rep., 991; Missouri, K. & T. Ry. Co. v. Mitchell, 87 S. W. Rep., 841; San Antonio & A. P. Ry. Co. v. Turney, 33 Texas Civ. App., 626; Texas & Pac. Ry. Co. v. Mayfield, 23 Texas Civ. App., 415; Texas Midland Ry. Co. v. Brown, 58 S. W. Rep., 44; Houston & T. C. Ry. Co. v. Reason, 61 Texas, 618; Ft. Worth & D. C. Ry. Co. v. Davis, 4 Texas Civ. App., 351; Railway Co. v. Williams, 51 S. W. Rep., 653; St. Louis S. W. Ry. Co. v. Byers, 70 S. W. Rep., 558; St. Louis S. W. Ry. Co. v. Parks, 90 S. W. Rep., 345; Redner v. Lehigh & Hudson R. Ry. Co., 148 N. Y., 733; Whitman McNamara Tobacco Co. v. Warren (Ky.), 66 S. W. Rep., 609; Parker v. Transit Company, 83 S. W. Rep., 1017 (Mo. App.); Chicago City Ry. Co. v. O'Donnell, 207 Ill., 478, 69 N. E. Rep., 882; Ray v. Pecos & North Texas Ry. Co., 88 S. W. Rep., 469; Ware-

house Co. v. Davidson, 80 S. W. Rep., 1035; Mexican Natl. Ry. Co. v. Mussett, 86 Texas, 719; Gonzales v. City of Galveston, 84 Texas, 3; Jones v. George, 61 Texas, 353; Eames v. Texas & N. O. Ry. Co., 63 Texas, 660; Texas & Pac. Ry. Co. v. Woods, 28 S. W. Rep., 418.

*Garnett & Eldridge,* for appellee.—It is not every negligent act, from which an injury results, that will support a recovery in behalf of an injured person, but to support a recovery in law the negligent act done or suffered must have been such that the person or corporation suffering or permitting it must in the exercise of care and prudence have been able to foresee or anticipate that as a consequence thereof injury might occur. Texas & Pac. Ry. v. Bigham, 90 Texas, 223; Chicago, R. I. & T. Ry. Co. v. Jackson, 89 S. W. Rep., 1117; Cole v. German Sav. & Loan Soc., 63 L. R. A., 419; Texas & Pac. Ry. Co. v. Kelly, 78 S. W., Rep., 372; Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Texas, 196.

SPEER, ASSOCIATE JUSTICE.—Appellant sought to recover damages from appellee for injuries received by him in an effort to rescue Mrs. John Parker from the threatened danger of being run over by one of its passenger trains. After the evidence was heard the trial court gave a peremptory instruction to find for the defendant and the sole question presented for our consideration, therefore, is whether or not the evidence raised the issue of negligence upon the part of appellee proximately causing appellant's injuries. The assignment of error is supported by the following condensed statement, which is in no way controverted by appellee:

"John Parker testified that on January 11, 1905, at Myra, he bought two tickets from appellee's agent at Myra and paid for the same, said tickets being for himself and wife and entitling them to transportation from Myra to Gainesville and return; that he and his wife first went into the waiting-room when they went down to the depot, and when they knew the train was coming they got up and went out on the platform, going west toward the west end of the platform, going in the usual and customary way to the coach; that there were some trucks on the platform sitting northwest and southeast, backed up, he thought, against the window of the depot extending out on the platform; that the trucks were about two feet and may be wider; that there was a hole of water on the platform between the trucks and the railroad rail, which hole of water was situated at west end of trucks, or rather northwest end of trucks, was round, or something like round, and extended past the trucks up to two or three feet of the rail, and was two or three steps across; that he passed through the edge of the hole of water on the north side, doing so because it was the only way he could go without moving the trucks or climbing over them, he thought; that his wife was following him and he had just passed the hole of water when she was struck; that when he passed the water he looked back for her and she was lying in the hole of water and appellant was lying there by her; that the platform was built of cinders and the trucks were standing about three or four feet from

the south rail; that if the bell of the engine was ringing he did not know it; that said trucks were used to take baggage to and from the depot when the train comes in; that he did not know why the trucks were down where passengers boarded the train; that the baggage car when coming east stopped at east end of platform, he thought, and east of where the trucks were sitting, and the trucks were right in the passageway.

"Appellant testified that the whole length of platform in front of appellee's depot at Myra is 184 feet 7½ inches, the platform extending east and west of depot; that bay window on north side of depot extends three feet and six inches north out on platform from depot and is nine feet four inches long; that on southeast side of depot the platform is four feet seven and one-half inches from ground and at southwest side of depot it is about six feet from the ground; that from the bay window to the track it is eight feet five inches, and the platform on the east end was eleven feet nine and one-half inches wide; that on west end the platform was twelve feet one and one-half inches wide, and that width of platform at about bay window from depot itself up to the rail of the track is about twelve feet; that the trucks measured three and one-half feet in width and twelve feet eleven inches in length; that the platform between depot building proper and appellee's track was made out of a wooden frame filled in with dirt and cinders and extended up to the track; that at the time he was injured the trucks were standing west of the bay window, something like four feet, perhaps a little bit further; that there was a pool of water near west end of trucks, the west end of trucks sitting in pool of water in the edge, as well as he remembered; that it was about a couple of steps across the pool of water, and as well as he remembered the water came up something near end of the cross-ties; that he knew Mr. and Mrs. Parker, saw them there on that occasion and saw them just as they started out of the depot toward the coach; that he did not remember whether he stepped out in front of them or just behind them; that they turned west, going in the usual course for passengers going to the coach and in the only way there was to go; that he went in the same direction, Mr. Parker being ahead, Mrs. Parker being next and appellant being next; that while they were going out to the coach Mr. Parker came to the hole of water and went directly through it and did not check, and Mrs. Parker, when she got to the hole of water, attempted to get around it, when appellant spoke to her, told her she was in danger and undertook to catch her by the arm, getting hold of her, he thought; that about the time he thought he had her by the arm the train struck them both, and that this was the last he remembered at that time, and the next thing he knew was when he was at his house and the doctor was fixing up his wounds; that the depression or hole where the water was on the platform had been there some little time, he did not know exactly how long; that he expected it had been there a month, or maybe two months, and that he had seen a little water collect there before; that the hole came to be there by a couple of barrels of oil being thrown

off on their ends, which barrels, after they had sat there some time, were rolled up to the south side of platform near west end of depot and west of bay window, near corner of main depot building; that Jim Andress was appellee's agent at Myra at that time; that appellant suffered from his injuries in his shoulder, arms and side, he spit up some blood, and was in bed five or six weeks; that he thought it was the pilot beam of engine that struck him, and he heard no bell rung or whistle blown about the time of accident; that every time there came a shower of rain water would accumulate in the depression made by said two barrels of oil; that east end of trucks on occasion of his injury was located about four feet west of bay window and were sitting something near center of platform; that when Mrs. Parker turned and stepped toward the track he would not say whether she stepped directly north or on an angle, and at the instant she stepped he saw she was in danger, told her she was in danger and jumped toward her immediately to reach her; that he fell against something, but he could not tell whether it was against end of trucks or not.

"James Harrison testified that in afternoon of day on which appellant was injured, some time about 12 o'clock or afterwards, he made an examination of place where accident occurred and went to where the trucks were standing; that there was some water there about west end of trucks, and there was signs of the trucks having been moved between twelve and eighteen inches from north of where they were standing; that he had noticed this hole on the platform several times before and had noticed that when it was raining water was standing there, having noticed water in said hole several times; that having to wade through this water called his attention to it; the hole was about eight feet wide when it was full while it was raining.

"Mrs. Parker testified that she was the wife of John Parker; that she was in Myra on January 11, 1905, the time and occasion appellant was injured; that she went to Myra for the purpose of taking the train to come to Gainesville; that she and her husband had tickets for Gainesville and were in waiting-room when they heard train whistle for the station, or first knew the train was coming; that when the train coming towards Gainesville came in from the west the passenger coach usually stopped west of the door of the depot; that when she went out of the door of the depot where she had been sitting she went west; that the baggage trucks sitting at the side of the room obstructed the way; that when she started to go to the coach she passed on the north side of the trucks, one end of the truck being against the bay window so that they could not pass along by the bay window; that when they were passing between the trucks and the railroad track a hole of water was between the trucks and the track, the hole of water being north of the trucks and going close to the track, running nearly to the rail, the hole of water being three or four steps wide; when she got to the hole of water she started to step around it and was struck by the train; that she was knocked down in the hole of water and that she never heard any bell rung at that time; that if she had heard the bell rung or

whistle sounded she would have gotten further away; that when she went from the depot where she was waiting toward the coach she went in the route that was customary for passengers to go in; that she did not think there was any other hole of water from the door of the depot to where she was injured except the hole she fell in, and if the hole of water had not been there she would not have stepped toward the track and been struck.

"J. H. Robinson testified that he was at depot at Myra when appellant was injured and saw appellant after he was injured making an effort to get up, and that the witness stepped back to the end of the trucks, which he got hold of and pulled back; that he thought it was twelve feet from the depot there to the rail; that it was somewhere between three and four feet from the north edge of the trucks to the rail, and that there was a puddle of water at the west end of the trucks and that this puddle of water extended until he supposed it was not more than two feet from the south rail, and that the puddle of water looked like it was three or four inches deep; that he thought appellant and Mrs. Parker were in the usual and customary passageway for passengers leaving the waiting-room and going out to the coach; that the trucks were not located at place where baggage car stopped on this occasion, and that Jim Andress, the agent, was out on the platform that morning, going out of the depot ahead of witness with the express and mail in his hand, and if he had had the trucks up where he attended to the baggage they would not have been in Mrs. Parker's way.

"Alfred Harrison testified that he was at east end of depot at Myra at the time of accident, and he went, on hearing of accident, and found appellant lying sorter at the end of the trucks or about on the end of the trucks; that appellant's body when he reached him was somewhere past the middle of the trucks toward the west and appellant was doubled up with his head sorter toward the truck.

"Fred Blum testified that the east end of the trucks was right at the N. W. corner of the bay window on the north side of the depot, and there was just hardly room for a man to go sideways and get through there; that when he saw appellant lying in the water and Mrs. Parker falling on top of him, they were in the hole of water, and the trucks must have extended to the pond of water; that it was about one and one-half or two feet from the rail to the hole of water; that the railroad ties were about eight feet in length; that he did not remember hearing the engine bell rung on this occasion.

"J. F. Mortimer testified that he was engineer on appellee's train that struck Mrs. Parker on January 11, 1905; that when he was going into a station like Myra it was his duty to keep a sharp lookout at all times on right of way, which was 100 feet wide, being 50 feet each way from center of track, to observe the platform and passengers as he was coming in; that the station agent has care and charge of the platform of the depot; that he saw trucks standing on the platform on said morning; that the trucks were near the middle of the platform; that appellee's track was four feet eight and one-half inches in width, and the coaches were in the neighbor-

hood of eight feet wide; that the coach extended about flush with and as far as the ends of the ties, which were eight feet long, thus leaving from eighteen to twenty inches that the ties extended on each side of the rails; that when he saw Mrs. Parker she was going in the usual and customary route and she was going the only way she could to get on the train; that if there had been just two and one-half feet between the trucks and the coach it was his duty to stop; that he did not remember where there had ever been a case before this one where a hole of water extended from the trucks to the track and passengers there going in where the hole of water was and the trucks were in three or four feet of the track; that it looked as if the hole of water caused Mrs. Parker to step the way she did; that he saw Mrs. Parker coming along with her head down and if he saw that a mere side step would cause her to come too close to the engine, it was his duty under these circumstances to either sound the whistle or to call to her if he had time, and that it did not take but a second for him to sound the whistle, and that he knew before she was struck that a mere side step would put her against the engine.

"J. F. Mortimer testified: It had been raining and the platform was all wet, which he ascertained when he went back; that the platform was wet between the trucks and the track; that he saw Mrs. Parker from the time she left the waiting-room until she was struck; that she was holding her head down and it looked, as he was coming along on his engine, that Mrs. Parker was going between the trucks and the rail.

"Barney Lutmer testified that he remembered when appellee and Mrs. Parker were hurt at the depot at Myra, at which time he was standing at the corner of the bay window; that just before appellant got hurt, he said, 'Mrs. Parker, you are going to get struck from the train,' and ran up there and wanted to save her; that appellant grabbed her and Mrs. Parker was struck down and Mrs. Parker and appellant both fell under the trucks, which were standing about three feet from the railroad track, slantways toward the rail, one end of the trucks pointing southeast and one northwest; that there was a round pool of water about three feet 'square' towards the rail of the track and extending in about one and one-half feet of the rail; that the pool of water extended under the trucks; that he did not notice any bell ringing or any whistle blown; that on the former trial of this case he testified that there was no space between the depot and the south side of the trucks, the trucks taking in the whole platform. Said Lutmer also testified that appellant and Mrs. Parker were struck when appellant got his hands on Mrs. Parker's shoulder."

The case has been once before appealed to this court (99 S. W. Rep., 124), and was reversed because the court submitted as a ground of recovery the negligence of the train operatives in failing to discover Mrs. Parker's peril, but we took occasion then to say that there was no merit in the assignments raising other questions, one of which was that there was no evidence tending to show negligence upon the part of the railway company proximately causing

the injury complained of. But, independently of our holding upon the former appeal, we think the testimony above detailed raised the issue of negligence upon the part of appellee in failing to provide its passengers a reasonably safe approach to the trains at Myra. Appellee's platform, which constituted its usual and intended approach from its station to its passenger trains, was blockaded by the large trucks described in the evidence, leaving only a narrow way between the trucks and the rails, through which intending passengers might be expected to pass, and even this narrow way was further allowed to become obstructed by the pool of water which Mrs. Parker was trying to pass around when she came in contact with the engine of appellee's train.

We think the court erred in giving a peremptory instruction to find for the defendant, and in failing to submit the case upon the issue above indicated. The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*