SAN ANTONIO & A. P. RY. CO. v.
BEHNE et al.   (No. 5788.)

(Court of Civil Appeals of Texas.   Austin.
June 11, 1917.   Rehearing Denied
Nov. 28, 1917.)

1. RAILROADS  ⬅113(10)—ROADBED—INSUF-
FICIENT DRAINAGE—LIABILITY FOR DEATH.

Under the statute (Rev. St. 1911, art. 4694),
creating cause of action for death caused by
neglect or carelessness of a railroad, and the
statute (article 6495) inhibiting a railroad con-
structing its roadbed without making the neces-
sary culverts or sluices, as the natural lay of
the land requires, for the necessary drainage, a
railroad in constructing its road across a creek
and its valley, failing to leave sufficient open-
ings to permit the flow of water for such neces-
sary drainage, and as a result the accumula-
tion of flood waters producing such pressure
on the trestle as to cause it to collapse, float
down stream, and knock from a tree one who
had taken refuge therein from the rising waters,
thereby causing his death, the company is lia-
ble, if its failure was the proximate cause of
the death.

2. RAILROADS  ⬅113(10)—ROADBED—INSUF-
FICIENT DRAINAGE — PROXIMATE CAUSE OF
DEATH—ANTICIPATION.

For failure of a railroad, in constructing its
road across a creek and the valley thereof, to
leave sufficient openings for drainage, as requir-
ed by statute (Rev. St. 1911, art. 6495), to be
proximate cause of death of one who, having
taken refuge from rising waters in a tree, was
knocked therefrom by the company's trestle,
floated down by high waters, it is not necessary
for it to have anticipated that some one would
probably be so located in a tree; but it should
anticipate those things which might happen,
though unusual.

3. RAILROADS  ⬅114(4)—ROADBED—INSUFFI-
CIENT DRAINAGE — PROXIMATE CAUSE OF
DEATH—QUESTIONS FOR JURY.

Whether a railroad—whose trestle, occupy-
ing a fourth of the length of its road across a
creek and the valley thereof, was floated by flood
waters, knocking from a tree one who had taken
refuge therein from rising waters—failed to leave
sufficient opening for drainage, as required by
statute (Rev. St. 1911, art. 6495), and, if so,
whether such failure was the proximate cause of
such person's death, is properly left to the jury.

Appeal from District Court, Milam Coun-
ty; J. C. Scott, Judge.

Action by Albert Behne and another against
the San Antonio & Aransas Pass Railway
Company.   Judgment for plaintiffs, and de-
fendant appeals.   Affirmed.

Henderson, Kidd & Henderson, of Cameron,
for appellant.   U. S. Hearrell and R. B. Pool,
both of Cameron, for appellees.

KEY, C. J.   The following statement is
copied from appellant's brief:

"This suit was instituted against appellant by
appellees to recover damages for the death of
their two sons, Ed and Manuel Behne, alleged
to have been caused by the breaking and float-
ing down of appellant's trestle in Elm creek
valley, bearing down in its wake a tree which ap-
pellees' sons had climbed; they having been
caught in said valley by an unusually sudden
overflow, and having taken refuge in the tree
from the rapidly rising water.   Appellant's gen-
eral demurrer and special exceptions to appel-
lees' petition were overruled.   The evidence de-
veloped that appellees' son Ed was lost, together

with another of their sons, Joe, but that their
son Manuel escaped.   And the case was submit-
ted to the jury on appellant's liability for the
death of appellees' son Ed.   The jury returned
a verdict for the sum of $2,500, and the court
entered judgment for that amount.   Appellant's
motion for a new trial, seasonably presented,
was overruled by the court, to which ruling of
the court appellant excepted, and gave notice of
appeal.   The appeal was perfected, and is pre-
sented to this court for review on the errors
assigned in said motion for a new trial."

At the trial the plaintiffs abandoned all
grounds of recovery except those resulting
from the defendant's alleged failure in the
construction of its roadbed across Elm creek,
and the valley thereof, to leave sufficient
openings to permit the flow of water as re-
quired by the natural lay of the land for the
necessary drainage thereof, which is a statu-
tory duty imposed upon all railroad compa-
nies in the construction of their roads.   No
issue was submitted to the jury concerning
the alleged death of Joe Behne.

The charge of the court and the answers
made by the jury to the special issues sub-
mitted therein were as follows:

"Gentlemen of the Jury:   This case is submit-
ted to you on what is known as special issues;
that is, certain questions will be propounded to
you, and space left under each question for you
to make your answers, and upon your answers
the court will proceed to enter judgment.

"In this connection you are instructed that:
'Negligence' is the want of ordinary care or the
want of such care as a person of ordinary pru-
dence would exercise under the same or similar
circumstances.   'Contributory negligence,' as ap-
plied to this case, is such negligence on the
part of Ed Behne as proximately helped to pro-
duce or contributed in producing the death of
the said Ed Behne, and without which his death
would not have occurred.   'Proximate cause'
means a direct cause without which the death of
the plaintiff's son Ed Behne would not have oc-
curred, and from which it could have been rea-
sonably anticipated that the death of plaintiff's
son or some like injury would result as a natural
and probable consequence.

"The burden of the proof is on the plaintiff
to establish their material allegations by the
preponderance of the evidence.   -The jury are the
exclusive judges of the facts proven, of the
credibility of the witnesses, and of the weight to
be given their testimony.

"Special Issue No. 1:   Did the defendant, in
the construction of its road bed across Elm
creek and the valley thereof, fail to leave suf-
ficient opening to permit the flow of water, as
required by the natural lay of the land, for the
necessary drainage thereof?   Answer:   Yes.

"Special Issue No. 2:   If you have answered
'Yes' to special issue No. 1, then was such fail-
ure of defendant to leave sufficient opening the
proximate cause of the death of the plaintiff's
son Ed Behne?   Answer:   Yes.

"Special Issue No. 3:   Was the flood in ques-
tion of date April 22, 1915, of such character
that railroad engineers of ordinary care, caution,
and prudence could reasonably have anticipated
the same?   Answer:   Yes.

"Special Issue No. 4:   Was the plaintiff's son
Ed Behne guilty of contributory negligence, un-
der the circumstances of the situation, in re-
maining in the valley or bottom of Elm creek
for the length of time as shown by the evidence?
Answer:   No.

"Special Issue No. 5:   What sum of money, if
paid now, would represent the value of the pe-

cuniary aid which the plaintiffs could reasonably have expected to receive from their said deceased son Ed Behne during his minority and after he had attained to his majority, less the cost of the maintenance and support of their said son during his minority?    Answer: $2,500.00 (twenty-five hundred dollars).

"In this connection, you are instructed that, in determining your answer to the foregoing special issue No. 5, you will not take into consideration any grief or sorrow suffered by the plaintiffs on account of the death of their said son, or the loss of companionship of their said son.    J. C. Scott, Judge."

We also further copy as follows from appellant's brief:

"The undisputed evidence shows that appellant's roadbed across Elm creek valley consists of about 3,000 feet of dump or embankment, and about 1,000 feet of trestle; that said dump, or embankment, had broken and washed out some four times prior to the flood in question, but that the trestle had never washed down or floated away until the occurrence of the flood in question; that below appellant's trestle in Elm creek valley, and parallel thereto, runs the Cameron and Ben Arnold public road, which had been generally traveled for several years prior to the flood in question, and that a short distance further down the valley, and on the north side of the channel, is a small tract of unfenced land; that people traveling said public road sometimes camped at Elm creek below appellant's roadbed, and that fishing and picnic parties had frequently, for several years, resorted to said unfenced tract of land; that such camping was at times when the creek was within its banks, and that there was no travel along said public road in Elm creek valley, nor any camping on or resorting to said tract of land or other part of said valley, when the creek was high and flood waters covered the valley; that the scene of the disaster complained of and said tract of unfenced land was within a stock-law district, and had been for a long period of time, and that no stock was allowed to run at large, or had been seen at large, in that locality for several years prior to the date in question; that the stock belonging to campers had been at different times seen at said place in Elm creek valley, but only at times when their owners were camped there for fishing or for spending the night, and such stock were not at large; that the camping at said place of picnic and fishing parties was not extensive enough to keep down the weeds, but that through the spring of every year the weeds, except in the road, grew very thick and very rank in said valley and on said track of unfenced land; that on the 22d day of April, 1915, appellees' sons had driven from their home, a distance of about 16 miles, to Elm creek, for the purpose of fishing that day and that night; that they had fished through the day, and about 7 o'clock in the evening they noticed the weather threatened rain, and thereupon began hitching their team to the wagon, and undertook forthwith to drive out of said valley to higher ground beyond the overflow district; that within 25 to 40 minutes after the rain began the flood waters were four to five feet deep over said valley, and appellees' said sons were unable to reach higher ground beyond the flood district, and they climbed a tree at the edge of said Cameron and Ben Arnold public road, a short distance east of and below appellant's trestle; that about 30 minutes after they had climbed said tree appellant's trestle gave way, and floated down the valley, coming in contact with the tree which appellees' sons had climbed, and bearing it down; that when the trestle struck the tree appellees' sons were thrown onto said trestle or into the flood waters, and Ed and Joe Behne were killed or drowned."

That statement is supplemented by the following substantially correct statement in appellees' brief:

"The material averments with respect to the only grounds of negligence relied upon were, in substance, as follows:

"It was charged that at the place where appellant, prior to April 22, 1915, constructed its roadbed and embankment across Elm creek and the valley thereof, about three miles north from Cameron, the natural lay of the land required for its necessary drainage a space of 3,965 feet, same being the distance between the high-water mark on the north and the high-water mark on the south side of the creek; that on the south side appellant, in violation of the statutes of the state, erected a solid dump or embankment 6 or 7 feet in height, extending from the south bank of the channel to the high-water mark on the south side, a distance of 2,132 feet, and on the north side a similar embankment reaching from the north end of the trestle to the high-water mark on the north side, 846 feet in length; that the bridge proper across the channel was 154 feet long, and that the trestlework connected with the bridge on the north side of the channel, and extended north to the beginning of the dump on the north side, 832 feet, thereby leaving, as the only place for flood waters to escape, an opening on the north side 986 feet, or approximately one-fourth the distance provided for by nature between the two high-water marks; so that on account of said embankments and insufficient openings the flood waters on April 22, 1915, were diverted from their natural course, and caused to surge through this artificial outlet and against the trestle with such concentrated and accelerated force that the trestlework, consisting of stringers of large timbers, steel rails, and cross-ties, was torn from its anchorings and hurled down the stream and valley, felling trees in its wake; that just below and opposite the trestle, and east of the right of way, there was an open and unfenced tract of land, consisting of 2 or 3 acres, through which ran the Cameron and Ben Arnold public road; that said road had for many years been used continually and habitually by the public generally, and that said vacant tract of land had for many years been habitually used as a public camping ground; that it was a common resort for picnic parties, and that people fishing on said stream frequently and habitually camped at that place, especially in the spring of the year, and that all of such facts and conditions were known to the defendant; that on the date of said flood Ed Behne, his two brothers, and their uncle, John Burnson, were fishing on the north bank of the stream, about 200 yards below the railroad, and when, about 7 o'clock p. m., the weather conditions indicated the probability of a heavy rainfall and rise in the creek, they made hurried preparations to leave the overflow district; that when they had hitched their team of mules to the wagon and were ready to start they noticed that the creek was rising rapidly, and hastily undertook to drive to higher land, but when they had reached a point on said public road about 100 yards below and opposite the trestle the rapid rush of waters at that place, caused by the embankment and by the insufficient opening at the trestle, forced them to abandon the team and wagon and take refuge in the trees; that the three brothers climbed a tree near by, which stood partly in the road, and had thus reached a place of safety but for the fact that the trestle struck the tree and bore it down, causing the boys to fall from the tree onto the trestle and into the water, and resulting in the death of Ed Behne. And in paragraph 16 of the petition it was further alleged as follows:

"'Plaintiffs say that for many years it is

well known that sudden rises or flood waters occur on Elm creek and its tributaries, and that said Elm creek drains an extensive territory, and that when great freshets occur, brought about by sudden and heavy rainfall, said Elm creek is liable to overflow its banks and bottom within a short time, and that the defendant's skillful engineers and experienced bridge builders did know such facts, or should have known such facts by the exercise of such care as is required of them; that they should have realized, from all the circumstances and conditions that surround said place and public road, that a failure to properly erect said trestle, and a failure to provide sufficient openings for water to pass through, that the giving way of said trestle and floating around of the steel rails, cross-ties, and the large stringers all together, was calculated to destroy, kill, and drown persons, stock, and animals that were in its reach, or that said structure might come in contact with, and that both persons and live stock might probably be in the reach of same; all of which facts and circumstances were in reasonable contemplation of such engineers and bridge builders when the injury occurred as aforesaid.'

"The evidence is without conflict to the effect that appellant's roadbed, bridge, and trestle were constructed and maintained as alleged by appellees, diverting and concentrating the flow of water by means of a solid embankment across the valley on each side of the stream, in all about three-fourths of the distance provided for by nature, and as shown by the high-water marks, and forcing it under and against the trestle with a rapidity and pressure that it would not otherwise have acquired. These facts are brought out in detail by the testimony of Quinn Walker, the county surveyor, who was first a witness for appellees and afterwards for appellant. See, also, the testimony of appellant's civil engineer, Gale Oliver. These two witnesses, after the 1915 flood, made the surveys for the map shown at page 75, and both say the map is correct. 'That would be a tremendous pressure there,' said Walker, 'when that 2,000 feet of water on one side and 1,000 feet on the other was all forced to go through that one-fourth space. The bridge knocked down trees below there. Some of the trees that it knocked down were not much smaller than the stove. It knocked them flat. That showed that the water had a tremendous pressure.'

"Elm creek and its tributaries constitute the drainage outlet for a wide scope of country above and west of the railroad, and the creek had been subject to sudden overflows long prior to the flood of 1915.

"It was established by the undisputed evidence, and so admitted on page 8 of appellant's brief, that the vacant block of land below the railroad, adjacent to the right of way and opposite the trestle, consisting of about six or eight acres, according to Charlie Angell's estimate, where Ed Behne and his companions were fishing and where Ed came to death, and through which ran the public graveled road, was habitually used by the traveling public as a camping ground and as a common resort for fishing and picnic parties.

"Manuel Behne, the only member of the party who survived the disaster, relates the circumstances thereof substantially as alleged in the petition.

"The tree that the three Behne brothers had climbed was four feet in circumference, and stood at the edge of the public road. It was 'right in the edge of the clearing of the road,' and at the place where another road led off down the valley from the main road. This other road 'had been used there for several years by people going down in there fishing and camping' and going after wood, and was the route by which the Behnes, in their attempt

to escape the flood, had reached the main road where the disaster occurred. Ed Behne's position in the tree was about 10 feet above the water. The two younger brothers were higher up in the tree. They all were 'safe out of the water so far as water was concerned.' What happened then is told by Manuel Behne as follows, bearing in mind that when he speaks of the 'bridge' he says he means the trestle:

"'After we got in the tree the trestle or bridge of the San Antonio & Aransas Pass Railway gave way. The bridge just gave way and washed right against the tree we were in. When it hit the trees it shook us out of them. My two brothers and I fell on the bridge. When we fell on it, it slided on further and turned over. My younger brother's age was 14 years. He and I fell on the bridge together. When the bridge turned over he went down in the water and never did come up. We have never found him since. The older brother (Ed) was found later. He was dead. We were up in the tree something like one-half hour before the bridge fell down. The water was rising pretty rapidly. The bridge also knocked down other trees there. Yes, sir; I mean the trestle. Old Man Brunson fell on the bridge too. He drowned. They all drowned but me. After the bridge turned over and threw me off, I got in another tree. That tree was about 250 yards from the one I first got in. I got in that tree and stayed there until next morning. Some one came and got me out then. Mr. Angell and Mr. Majors came in a boat and got me. I never saw my younger brother any more after he went under the water.' And again: 'When the bridge hit the tree it knocked us out. The tree is flat down, lying on the ground. It was torn up by the roots. It is out there right now.' Brunson was in another tree about 20 feet from the one which the boys had climbed. No trees were broken down above the railroad track."

## Opinion.

Without considering in detail all the assignments of error, we announce our conclusions as to the merits of the appeal as follows:

[1] The statute of this state (Rev. St. 1911, art. 4694) creates a cause of action in favor of near relatives when the death of any person is caused by the neglect or carelessness of the proprietor, owner, charterer, or hirer, or receiver, or other person in charge or control of any railroad, or other common carrier, or by the unfitness, neglect, or carelessness of their servants or agents. And by another statute (article 6495), which is mandatory in its terms, it is declared that "in no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof." While the main object of the enactment of the latter statute may have been the protection of the rights of landowners, still it is not so limited by its terms, and is broad enough to include every other injury which results directly from a failure to comply with its terms. Ry. Co. v. Johnson, 65 Tex. 389; Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 399. So, if it be true, as alleged in plaintiffs' petition, and as in substance found by the jury, that in the construction of its roadbed across Elm creek and

the valley thereof appellant failed to leave sufficient openings to permit the flow of water as required by the natural lay of the land for the necessary drainage thereof, and that as a result of such failure the accumulation of flood waters produced such pressure upon the trestle as caused it to collapse, float down the stream, and knock the deceased out of the tree in which he had taken refuge, and thereby caused his death, then appellant should be held liable to appellees, unless it be, as contended by counsel for appellant, that the failure of appellant to perform its statutory duty in the construction of its roadbed was not the proximate cause of the death of the deceased.

Without accomplishing any very satisfactory results in many instances, a great deal of effort and learning have been expended by the bench, the bar, and text-writers in attempting to elucidate the subject of "proximate cause." In Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, Chief Justice Gaines deprecates the use of the word "proximate," because of the fact that in ordinary language a proximate cause is the nearest while, as he points out, in a legal sense an act of negligence may be deemed a proximate cause of an injury, although it may not be the last cause in a connected succession of events which have led to a result. But, in discussing the doctrine of anticipated results, the opinion in that case seems to be out of harmony with other opinions of the same court as well as the weight of authority.

In that case the plaintiff had delivered to the railway company certain cattle for shipment, and they had been placed in a pen provided by the carrier for that purpose. The gate which admitted entrance into the pen was out of repair, which fact had been known to the carrier for several months. The appliances for fastening it were defective, which condition was due to the negligence of the company. In order to prevent the escape of the cattle from the pen, the plaintiff, who was the owner of the cattle, was in the act of fastening the gate with a rope, when the noise of a passing freight train so frightened the cattle as to reduce them to a condition of panic, causing them to plunge upon the gate before the plaintiff could escape therefrom, and as a result he was hurled some 20 feet from the ground and injured. But for the defective condition of the gate, the cattle would not have escaped. The Supreme Court held that the conduct of the defendant in permitting the appliances for fastening the gate to be out of repair was not the proximate cause of the plaintiff's injuries. That holding was based upon two grounds—one being that the negligence in reference to the gate was not the primary or efficient cause of the injury, and the other and main reason being that the injury was so remote and improbable as that the railroad company was not required to foresee and guard against it;

and in the course of the opinion Judge Gaines said:

"It ought not to be deemed negligence to do or fail to do an act, when it was not anticipated and should not have been anticipated that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. * * * It follows, * * * the question of probable cause (meaning proximate cause) ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated * * * some like injury," etc.

Judge Street, in his excellent work on Personal Injuries in Texas (see section 45), deals with the doctrine of anticipated consequences in such a satisfactory manner that we make the following extended quotation from that book:

"It is universally true that, for negligence to be actionable, injury must be 'observable and preventable,' except where declared by positive law. The rule with reference to the anticipation of consequences has been thus often stated: The defendant is liable for injuries proximately caused by his act or omission when injurious consequences to others could, under the circumstances, have been foreseen by a person of ordinary prudence in the defendant's position at the time as a reasonable probability. Unless injury could have been foreseen as reasonable or probable, the act or omission, if otherwise innocent, does not become negligent except it be made so by positive law; that is to say, by statute or city ordinance. Hence the mere intervention of a cause or causes that might reasonably have been foreseen will not break the causal connection between the original cause and the injury. By the foregoing statement it is not meant that the defendant would be liable only to one whom his negligence was consciously likely to injure; for he is liable to any one, known or unknown, injured by a violation of a duty he owes to the public or to all persons in a given situation or relation. Chief Justice Gaines, in the Bigham Case, ante, says: 'It ought not to be deemed negligence to do or fail to do an act when it was not anticipated and could not have been anticipated that it would result in an injury to any one. To require this is to demand of human nature a degree of care incompatible with the transaction of the ordinary vocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed.'

"This is undoubtedly a correct statement of both the law and the reason for it. But it is a clear non sequitur to say, as the opinion continues, 'it follows * * * the question of a probable cause,' meaning proximate cause, 'ought to depend on the further question whether a reasonably prudent man, in view of all the facts, would have anticipated * * * some like injury,' etc. Anticipation of 'some like injury' is not a logical equivalent of anticipation of some injury; and the legal and ethical reasoning which makes liability depend on the reasonable anticipation of some injury does not support the proposition that it should be limited to an injury like that which might have been expected. No doubt that actual injury is generally like that anticipated, for it must be a natural and proximate result of a given act or omission under conditions that are either known or should have been. But non constat that it must be so. Without the citation of a

case or text-writer, the court adopts this conclusion in an opinion otherwise replete with quotations and citations. If correct, it restricts liability to injuries that are usual or ordinary, and excludes those that are unusual or extraordinary, though natural and proximate; that is to say, extraordinary results effected by the operation of natural laws. It is believed that the true rule is: 'It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that *some* injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.'

"The subjoined extract from Beven on Negligence discloses the attitude of the English courts on the subject:

" 'In the argument in the Exchequer Chamber much stress was laid by the defendants on the dictum of Bramwell, B., in Blyth v. Birmingham Waterworks Co.: "It would be monstrous to hold the company liable for negligence because they did not foresee an event that was so remote from probability that for many months it could not be found out what was the cause of the injury to plaintiff's premises." Thus, Channell, B., in giving judgment, explained thus: "I quite agree that, where there is no direct evidence of negligence, the question what a reasonable man might foresee is of importance in considering the question whether there is evidence for the jury of negligence or not, and this is what was meant by Bramwell, B., in his judgment in Blyth v. Birmingham Waterworks Co.;" "but when it has been once determined that there is evidence of negligence, the person guilty of it is equally liable for its consequences, whether he could have foreseen them or not." And this opinion was adopted by Blackburn, J., in his judgment. "What the defendants might reasonably anticipate is," said he, "only material with reference to the question whether the defendants were negligent or not, and cannot alter their liability if they were guilty of negligence." "If the negligence were once established, it would be no answer that it did much more damage than was expected."

" 'This decision establishes that, when negligence is once shown to exist, it carries a liability for the consequences arising from it, whether they be greater or less, until the intervention of some diverting force, or until the force put in motion by the negligence has itself become exhausted. In discussing it confusion has been caused by not separating the two points which were mainly argued: (1) Was there any evidence of negligence to leave to the jury? (2) If there was evidence of negligence to go to the jury, for how many of the consequences flowing from the negligence were the defendants liable? * * * Negligence being shown, the person guilty is answerable for all the consequences, "whether he could have foreseen them or not." '

"Referring to his own explanation of the case of Lee v. Riley, where the plaintiff, on account of the defendant's neglect to keep a fence in repair and his mare's escaping and kicking the plaintiff's horse to death, was held entitled to recover though there was no evidence of the mare's vicious disposition, Mr. Beven speaks of the decision as all-important for understanding this branch of the law, because indicating a distinction 'between acts from which injurious consequences in the result flow to others, but which are not negligence in law, because these consequences would not antecedently have been anticipated to flow as natural results, and acts which carry liability because their probable outcome is injurious acts, though in fact the consequences which flow are not those anticipated.' He says 'an act is negligent if the doer of it, by thinking, might anticipate loss and injury as a natural and probable consequence to some third person with regard to whom or his property he had a duty not to be negligent. Further, the doer of a negligent act is responsible

for the consequences flowing from it in fact, even though antecedently, to a reasonable man, the consequences that do flow seemed neither natural nor probable. As Tindal, C. J., shortly states the principle in the Exchequer Chamber, in Barrow v. Armand, the defendant "should answer for all the loss resulting from his act." But a man is not responsible for the consequences of an act (not a trespass) from which the ideal reasonable man would not anticipate injurious consequences in fact to follow. The doing of the act is not blameworthy; therefore the consequences are irrelevant.' 'Where an act is negligent, it is not necessary, to render it the proximate cause, that the person committing it could or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been foreseen or anticipated that *some* injury might result.'

"In the discussion of proximate cause the learned authors of Shearman and Redfield on Negligence say: 'So much difficulty, indeed, has been felt in attempting to lay down a rule to cover all possible cases, that some of the ablest judges have declined to state any fixed rule, and have indicated a disposition to leave all doubtful cases to the jury. The practical solution of this question appears to us to be that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not), would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind.'

"The proposed rule, limiting liability for negligence to consequences that could have been foreseen, is tentatively advanced by the learned author of Watson on Damages for Personal Injuries. He seeks, however, especially to guard the reader against its too easy acceptance by directing attention to the fact that no one questions the affirmative aspect of the rule, that is, that every one is liable for all injurious consequences of his negligence that might have been foreseen as reasonably probable, and reminds him that the proposed rule is only 'means to an end'—a means of determining whether or not in a particular case the injuries are natural and proximate or otherwise. Mr. Watson concludes that no 'more is ever necessary than that injury in some form or other was or might have been foreseen.'

"In Armendaiz v. Stillman et al. the action was for negligently injuring plaintiff's land by the construction of a jetty in the Rio Grande river. With respect to the defense that, 'with ordinary prudence and foresight and judgment, defendant could not foresee that said "Field's Jetty" was at all likely to produce, occasion, or cause any damage. * * * to plaintiff's property,' the court, by Justice Stayton, says: 'The defendants are liable for such injury as the plaintiff has sustained by their act, without reference to the degree of care used by the defendants, or their ability to foresee what would be the result of their acts, or to their intentions.'

"In the case of Gulf, Colo. & S. F. Ry. Co. v. Southwick, in response to the contention that though defendant may have been guilty of a violation of duty to the plaintiff, yet if the injury inflicted, death of the wife, could not have been foreseen as a probable result, it could not be held liable, the Court of Civil Appeals, by Associate Justice Pleasants, said: 'But we do not concur in this proposition. It may be conceded that the death of Mrs. Southwick could not have been reasonably anticipated from the use of the stool; yet if the use of the stool was negligence on the part of the defendant, without contributory negligence

by the deceased, and the injury was the proximate result of that negligence, and such injury resulted in death without fault or neglect of the injured in the use of remedies, the defendant, by the terms of the statute, would be liable.' It is familiar that no action lies under the statute except where it would have existed at common law had the injury inflicted not resulted in death. ·'The law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen.' · "If the rule announced in the Bigham Case is to be understood as limiting responsibility, for negligence already ascertained, to consequences that could have been foreseen, then it is a return to the doctrine of the overruled and universally discredited cases of Ryan v. N. Y. Centr. Ry. and Penn. Ry. v. Kerr, to the effect that negligence entails no liability for extraordinary consequences, although caused by natural laws. But, in the view of the writer, this would be a misinterpretation of the decision. The court says: 'It ought not to be deemed negligent to do or fail to do an act when it was not anticipated and could not have been anticipated that it would result in injury to any one.' Beyond all controversy this is a correct statement of the law in determining the character of an act or omission, in ascertaining whether it is negligent or not. If it be lawful—that is, not contrary to statute or ordinance, and otherwise innocent except for the consequences it entails—then foresight of harm is necessary to its denouncement as negligence. But if negligence exists, as in the violation of a statute, where, as in Texas, such violation is negligence per se, or in the violation of any other duty, as in the furnishing of an insecure cattle pen by a common carrier, foresight of the kind of injury likely to be inflicted is not a rule of determining the consequences for which a negligent defendant will be liable. Admitting the negligence, as is done in the Bigham Case, the consequences for which the defendant is liable are such as are natural and proximate, and not such as are merely ordinary and probable. The consequences for which he is liable in such case are to be ascertained in the same manner as the damages for an injury negligently inflicted generally; that they are unexpected, unusual, or extraordinary is only for the consideration of the jury in determining whether they are natural and proximate. By a violation of duty to the plaintiff, the defendant is guilty of negligence; the further enquiry relates to the injury and damages thereby inflicted. Actionable negligence is a breach of duty with injury naturally and proximately resulting; in final analysis those who claim that a negligent defendant is only liable for such injuries, or such like injuries as could reasonably have been foreseen as probable, in effect contend for the substitution of the term ordinary and probable for natural and proximate.

"It should be borne in mind that this so-called rule of the anticipation of consequences ·is itself only interpretive of the general doctrine of natural and proximate cause. Its chief usefulness is to confirm and verify conclusions independently reached. It is vague and indefinite, and often furnishes confirmation of opposite conclusions reached by different minds, equally honest and sincere, from the same data; and hence is wanting in the essential element of a true rule—reasonable certainty. It is too capable of being used as a mere pis aller. Rightly understood, it applies only to acts or omissions not merely lawful in the sense of not being denounced by law or not being actionably negligent, but such as are innocent and not blameworthy or culpable. It is inapplicable where the ·act or omis-

sion is unlawful, or the injury has been willfully or wantonly inflicted, or is a direct and immediate result of the defendant's negligence.

"Thus, in the Bigham Case, because the original act of the defendant in permitting the fastening to the gate of its cattle pen to become insecure, though negligent, was, it is said, 'lawful,' it·is held that the failure to provide a secure fastening gave no right of action for injuries that could not have been reasonably foreseen; implying that if leaving the fastening of the gate insecure were an unlawful act, the defendant would have been liable if the injuries were naturally and proximately caused thereby, whether the probability of injuries of the character inflicted could have been foreseen or not. That this was the intention of the court is confirmed by the express approval in the case of the principles announced in the Gonzales Case. The main principle there announced, and doubtless the one here referred to, is that, if the act or omission of the city is unlawful, 'it will be liable for an injury resulting from an unforeseen concurring intervening cause.'"

[2] In the present case proof shows that persons were in the habit of resorting to the place where the deceased and his two brothers were camped, and therefore appellant was required to anticipate that a sudden overflow of the stream might prevent one or more persons who were camping at that place from making their escape in the usual way, and result in such persons seeking protection by climbing trees; and that, in the event of the trestle breaking loose and washing away, in floating down the stream it might tear down trees in which persons had taken refuge. We do not hold that, in order to create liability, it was necessary for appellant to have anticipated that some person would *probably* be located in a tree top on such occasions, nor do we believe that the law requires such a holding in order to establish liability. It should have anticipated those things which *might* happen, even if such occurrences would be unusual.

[3] The trial court left it to the jury to determine whether or not appellant failed to comply with the statute in the construction of its roadbed, and whether or not such failure was the proximate cause of the death of appellees' son, and we hold that that procedure was proper, and that the court should not have instructed a verdict for appellant, and in support of that conclusion we copy from appellees' brief the following summary of certain Texas cases, all of which tend to support the ruling referred to:

"An ice company negligently constructed and maintained a blowpipe in connection with its machinery, which extended out to the right of way of a railroad company, and from which steam, etc., was emitted. A child was on ·the right of way near the end of the pipe and was killed by the discharge of steam and mud through the pipe. Defendant ·was not aware of the presence of the child, and asked the court to charge that, if she was on the right of way, defendant would not be liable. The court, through Justice Speer, held the charge properly ᵣefused, because it ignored the further issue that, 'even the right of way at this place was a public place, traveled and frequented so generally by the public, including children, as that appellant ought, in the exercise of ordinary dili-

gence, to have anticipated their presence at that place.' The opinion refers to City v. Pitts [102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843], several times cited by appellant in this case, and other similar cases, and says they 'support the general proposition that one does not owe a duty in the construction and maintenance of his structures or operation of his business to guard against trespassers, but they do not intimate to the contrary of the principle above announced, that such person would owe a duty to that part of the public whose presence, under the facts of the case, ought reasonably to be anticipated. They recognize such doctrine.' A writ of error was denied. Orient C. P. I. Co. v. Edmundson, 140 S. W. 124.

"A dealer in fireworks, having some damaged stock unfit for sale, deposited it as rubbish on a block of land, the private property of another, where there was a pecan grove near a public highway to which boys, either as trespassers or invitees, were accustomed to resort in search of pecans, during the season when pecans were falling. The premises were inclosed with a wire fence, and were entered through a gate near the residence of the person in charge, whose duty it was to keep off trespassers. Notices showing that the premises were posted were to be seen at different points over the fence and near the gate. A boy visiting the premises found and appropriated a piece of explosive, and while on his way home with it, wishing to divide the piece with a companion, struck it against a rock, causing an explosion that injured him. The court reversed an instructed verdict for the defendant, and held that the jury should have been permitted to say whether the presence of the boy on the premises should have been anticipated, and whether the injuries were the proximate result of the negligence. Little v. James McCord Co., 151 S. W. 835.

"Two sections of a freight train became uncoupled in a ravine and at a place where people were accustomed to pass, resulting in the death of a person who was either on or near the track. Whether defendant should have anticipated the occurrence 'or some like injury to some one,' on account of the public nature of the place, was a question for the jury, and an instructed verdict for defendant was reversed by the Supreme Court in an opinion by Judge Gaines. Washington v. Ry. [90 Tex. 314], 38 S. W. 764.

"A lineman in the employ of an electric company, while at work on an awning in front of a store assisting in erecting a pole, came in contact with an uninsulated wire strung over the awning belonging to defendant, which was heavily charged with electricity, and was killed. Because the trial court refused to permit plaintiff to prove that the awning had been frequently used by persons going on the roof to repair and paint the awning, to paint the walls of the building, and to put in telephone connections, an instructed verdict for the defendant was reversed. Rucker v. Sherman Oil Cotton Co. [29 Tex. Civ. App. 418], 68 S. W. 818.

"A water tower in the city of Temple, about 20 feet in diameter and 150 feet in height, was so defectively constructed that it fell to the ground about 3 o'clock one morning, and the rush of water against a house capsized and crushed it, and caused the explosion of a lighted lamp, whereby an occupant of the house was fatally burned. A judgment of the lower court sustaining a demurrer to the petition was reversed by this court in an opinion by Chief Justice Fisher, holding that 'the petition charges negligence and shows that the damages claimed are the result of such negligence.' Rigdon v. Temple Waterworks Co. [11 Tex. Civ. App. 542], 32 S. W. 828.

"Sparks were negligently emitted from a locomotive engine and fell on the clothing of a child, who was lying in a cradle in her father's house, and the child was seriously burned. The injury should have been anticipated, and the defendant's negligence was the proximate cause. Railway v. Johnson, 51 S. W. 531; Id. [92 Tex. 591], 50 S. W. 563.

"In violation of a statute, a railroad company permitted dry grass to accumulate on its right of way. Sparks from a passing locomotive set fire to the grass, and the fire spread to the yard of a residence where a child was playing, whereby the child was seriously burned. The negligence in permitting the combustible material to remain on the right of way was the proximate cause of the injury. Greer v. Railway [173 Mo. App. 276], 158 S. W. 740.

"A telephone company, with knowledge that the main travel at a street corner was around and close to one of the angles formed by the intersection of the streets, set one of its poles at a distance of 9½ feet from this angle, leaving a passage of that width between the pole and two posts which stood in the angle. Plaintiff's wife attempted to drive a gentle horse through this passage, and as the vehicle was passing between the pole and the posts the horse threw his head to one side to drive away a fly, causing one of the forewheels of the buggy to strike the pole, throwing plaintiff's wife from the buggy and injuring her. Held, that the location of the post was the proximate cause of the injury. Writ of error denied. Tel. Co. v. Billingsley [33 Tex. Civ. App. 452], 77 S. W. 255.

"A railway company negligently jarred and jolted a car loaded principally with fireworks and oil, causing an explosion which resulted in a fire. A fire signal was sounded by some one not connected with the company, and a number of the city fire companies responded for the purpose of aiding in extinguishing the fire, when another explosion occurred which caused the death of a fireman. It was held that the defendant could have anticipated the response of the fireman, and that he might be thus brought within the range of explosion, and that therefore the original negligence in causing the explosion was the proximate cause of the death. Writ of error denied. Railway v. O'Leary, 136 S. W. 601.

"Beneath a railroad bridge that spanned a creek there was a passageway through which the plaintiff, within the defendant's knowledge, and under circumstances indicating its permission, had been accustomed to travel in going from his residence on one side of the railroad to his farm on the other side. The bridge was about seven feet high, and constructed in 'the usual way,' with bolts extending from the timbers above down through the stringers, and the ends of the bolts protruded two or three inches below the underside of the stringers. The bridge was so low that a man could not ride on horseback under it without stooping, and all these conditions were known to the plaintiff. At the time of his injury plaintiff was on his way to the farm, riding one mule and leading another, and while he was attempting to cross the right of way the mule he was riding became frightened at a piece of tie lying on the ground, and ran under the bridge, where plaintiff's head came in contact with the end of one of the bolts projecting below the stringers, whereby he was injured. The jury was held warranted in finding that defendant's negligence in maintaining the underground crossing as shown was the proximate cause of plaintiff's injuries. The court, through Chief Justice Conner, said that it must have been within the contemplation of defendant 'that occasion might arise when some unexpected happening would bring the user (of the crossing) in contact with the low-hanging bridge.' Railway v. Cardwell, 187 S. W. 1073.

"A carrier undertook the shipment of mules and placed them in a car that was not properly bedded. The plaintiff accompanied the shipment, and it was contemplated by the contract

that he would have occasion at intervals to enter the car for the purpose of safeguarding the mules. After the car had been transported beyond the defendant's line of road, and while it was being handled by a connecting carrier, it was detached from the train and placed on a switch track in the yards. On discovering that one of the mules was loose, plaintiff went into the car and retied the mule, and just as he was turning to leave the car a 'string' of cars was negligently driven against the car containing the mules, throwing one of the mules to the floor. In falling the mule struck the plaintiff, threw him to the floor, and fell upon him, to plaintiff's damage. The negligence of the defendant, the initial carrier, in failing to properly bed the car, was a proximate cause of plaintiff's injuries. Writ of error denied. See 185 S. W. p. xv, col. 3; Railway v. Ryon, 177 S. W. 525.

"A carrier negligently left a depression in a depot platform. A passenger, in attempting to go around the depression, which was then filled with water, was struck by an engine and knocked against a third person, who was thereby hurled against the handles of a truck on the platform. The negligence of the carrier, in leaving the depression in the platform, was the proximate cause of the injury to the third person. In this case the trial court instructed a verdict for the defendant, and the case was reversed by the Court of Civil Appeals at Ft. Worth. The next trial in the court below resulted in a verdict for plaintiff, which was affirmed by the San Antonio court. Railway v. Harrison [56 Tex. Civ. App. 17], 120 S. W. 254; Harrison v. Railway [49 Tex. Civ. App. 467], 109 S. W. 442.

"A railroad company was maintaining a defective track and defective couplings on its cars. By reason of one or both of such causes, a string of cars attached to an engine broke loose and was speeding down the track at the rate of 12 or 15 miles an hour, when a switchman undertook to board the cars in order to set the brakes, so as to prevent collision with another car standing at a distance on the track. He had reached a position 'with his left foot in the stirrup, with his left hand on the support above, with his right hand on one of the rounds of the end of the ladder, and his right foot on an extending uncoupling rod,' when the collision occurred by which he was injured. The jury were authorized to find that either the defective couplers or the condition of the track was the proximate cause of the injury. Railway v. Cabell, 161 S. W. 1083.

"A locomotive engineer negligently left his engine in a dangerous position, in charge of an inexperienced fireman, who knew nothing of its working or mechanism. 'Either inadvertently or intentionally,' the fireman, by some act, set the engine and train in backward motion down a steep grade, resulting in injury to the conductor, who was thrown from the train while attempting to apply the brakes. The negligence of the engineer in leaving his engine was the proximate cause of the conductor's injury. In this case the Supreme Court, through Chief Justice Stayton, again declares that the question of proximate cause is for the jury, 'whose finding will not be reversed on grounds purely theoretical.' Railway v. Mussette [86 Tex. 708], 26 S. W. 1075 [24 L. R. A. 642].

"Plaintiff was repairing a railroad track, when the foreman sent an employé back to signal an approaching train. The signal was given, but either on account of the negligence of the engineer, or the negligence of the company in maintaining insufficient brakes, the train failed to stop, and the fireman, apprehending danger of a wreck, jumped from the engine against the plaintiff and injured him. The negligence alleged was the proximate cause of the injury.

Jackson v. Railway [90 Tex. 372], 38 S. W. 745.

"When a piece of coal fell off a passing train, and injured a section hand who was standing near the track, the defendant company was not exempt from liability because the injury was not such a result of its negligence as might reasonably have been expected. The court said: 'The question is not whether an act of this character ever happened before, but, rather, whether, under the circumstances of this case, the falling of a large lump of coal, propelled with great force by reason of the speed of the train, might reasonably be expected to strike and injure some person at a place along the track where he had a right to be.' Railway v. Wood, 63 S. W. 164.

"At a place on defendant's railroad track where cattle had been frequently seen, and where people had been accustomed to cross, a fast train, through negligence of the engineer, struck a cow and hurled it through the air so that it struck the plaintiff, a pedestrian, about 19 feet from the track. The negligence was the proximate cause of the injury. Writ of error denied. Railway v. Marchand [24 Tex. Civ. App. 47], 57 S. W. 860.

"An electric light company negligently placed a defective wire, heavily charged with electricity, near a telephone wire which extended into the house of the deceased. The electric wire came in contact with the telephone wire, causing sparks to be emitted from the latter, and the deceased, in attempting to cut the telephone wire with iron pinchers for the purpose of preventing a firing of his premises, was killed in the effort. A verdict for plaintiffs was affirmed by this court, in an opinion by Justice Rice, and a writ of error was denied. Temple Electric Light Co. v. Halliburton, 136 S. W. 584.

"For a number of years a city had permitted a pile of lumber to remain in the street, and that was the ground of negligence relied upon. A drayman drove his vehicle against the pile, causing lumber to fall against a child playing on the opposite side, of whose presence he was not aware. The jury should have been allowed to say whether the city was negligent as charged, and whether such negligence was the proximate cause of injury to the child. Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284 [31 Am. St. Rep. 17].

"The defendant unlawfully constructed a gangway across the street. While the deceased, in his buggy, was passing over the obstruction, his horse was frightened by the noise of a truck on which an employé of defendant was rolling a bale of cotton along the gangway, and ran away, turning the buggy over, whereby deceased was fatally injured. The unlawful obstruction of the street was the proximate cause of the injury. Among other decisions, the opinion cites the Gonzales Case, supra. Writ of error denied. Shippers' Compress Co. v. Davidson [35 Tex. Civ. App. 558], 80 S. W. 1032.

"The negligence of a railroad company in overcrowding its cars, compelling a passenger to ride on the platform, from which he was pushed by the jostling of other passengers, was a proximate cause, the casualty being one which the company might reasonably have foreseen, though it could not have foreseen the particular circumstances. Writ of error denied. Railway v. Williams [20 Tex. Civ. App. 587], 50 S. W. 732.

"By reason of defects in a railroad track, a train parted while running down a grade. Subsequently the two sections collided and burst open a gasoline tank. When the conductor came forward with his lantern he was injured by an explosion. The jury was held warranted in finding that the condition of the track was the proximate cause of the injury. Chicago, etc., Ry. Co. v. Price, 38 C. C. A. 239, 97 Fed. 423.

"Plaintiff, while riding in a box car, was

seated near an open door of the car. In front of this car was a flat car carrying lumber, that had been loaded in a negligent manner, and while it was being transported in that condition a piece of lumber fell or was thrown from the flat car and struck the plaintiff. The defendants had requested a charge to the effect that they would not be liable if it could not have been anticipated 'that plaintiff would have been injured' on account of the negligence, and the appellate court, through Justice Neill, said: 'It may be true that the accident was of such extraordinary form that, under its peculiar circumstances, it could not have been expected to happen to plaintiff, sitting where he was; yet the loading of the car, without using any diligence to fasten the lumber thereon, and receiving it and carrying it in the train, with the unfastened lumber, was negligence, for it threatened danger in many directions. Therefore, as is said in T. & P. Ry. Co. v. Carlin, 111 Fed. 777, 49 C. C. A. 605, 60 L. R. A. 462, it was liable to produce familiar results which would cause serious injury. The fact that it happened to cause the injury in a manner so unusual that it was not to be expected does not prevent the act from being negligent, when it was likely to cause injury in a way that might be foreseen. It may be true that the negligence in the case produced an effect not before observed, the circumstances of which could not have been anticipated. But if the negligence was liable to produce other and familiar injuries, the peculiarity of the accident does not prevent liability. The opinion quoted was on a writ of error sanctioned by the Supreme Court of the United States, and is in accord with all of the textbooks on negligence, and in harmony with the decisions of the courts of last resort in this state.' Writ of error denied. See 98 Tex. 615. Railway v. McComus [36 Tex. Civ. App. 170], 81 S. W. 760."

Most of the cases referred to have dealt with the question of proximate cause when liability was predicated upon common-law negligence, but some of them indicate a distinction between liability based upon negligence and liability predicated upon failure to perform a statutory duty, and state that in such cases as fall within the latter class the defendant is liable for every injury which results from such failure, regardless of whether or not any such injury could have been anticipated. This doctrine we regard as sound and just. It seems to this writer that the cases which have denied liability for unlawful conduct, unless the particular injury, or one of similar character, could have been anticipated, do not rest upon a sound basis. There is no equity in favor of a wrongdoer, and the dictates of justice do not require that he should be relieved from liability for any injury which has resulted directly from his wrongful conduct. On the contrary, a wrongdoer, having no equity in his favor, is not entitled to any special consideration or protection at the hands of the court; and, if his wrongful conduct has caused injury to another, it is nothing but right that he should be required to respond in damages, although he could not have anticipated the particular injury or one of like character. And this is particularly true where the wrongful conduct complained of is prohibited by statutory law. The courts ought not to encourage the violation of a mandatory statute by teaching a doctrine which would say to those who are required to comply with its terms that if you fail to do so, no matter how much injury may result, you will not be held liable, if such injury is not usual or probable, and therefore not anticipated. A more wholesome and just doctrine, and the one believed by this court to be sound, is to declare that those who fail to comply with statutory requirements will be held liable for all injuries which result directly from such failure.

The other questions presented in appellant's brief have been duly considered, and are decided against appellant.

No reversible error has been shown, and the judgment is affirmed.